# CASES DETERMINED

# August Term, 1899.

PATTON and another, Executors, Respondents, vs. LUDING-
TON, Appellant, and others, Respondents.

SAME, Appellants, vs. LUDINGTON, imp., Respondent.

*June 7 — September 5, 1899.*

*Wills: Construction: Time from which wills take effect: "Deceased
child:" Trusts: Remainders, vested or contingent ? Counsel fees.*

1. Testator, after certain specific devises and bequests, gave all the
residue of his estate to his executors or their successors, in trust,
to invest and keep the same invested, and from the income thereof,
during the lifetime of his wife, pay the annuity provided for her,
and distribute the remainder thereof semi-annually among all his
children equally, the issue of a deceased child taking by representa-
tion its parent's share, and upon the death of his wife to divide
the residue of the estate equally among all his children, share and
share alike, the issue of any deceased child to take by representa-
tion the share which his, her, or their parent would have taken if
living. Certain of his estate was not to be disposed of during the
life of the wife or the youngest child surviving at testator's death,
unless they survived a fixed period. Deceased left surviving him
his widow and six children. One of the children subsequently
married and died before the testator's widow, without issue, tes-
tate, leaving his widow as his sole heir, to whom, by his will duly
admitted to probate, he devised and bequeathed all his property.
In an action to construe the will, *held*, that a general purpose of
the testator to treat all his children alike was manifest, and as
soon as the will was admitted to probate it took effect, by way of
relation, as of the date of the death of the testator, and its language
should be construed with reference to that time.

103    629
d108   101
d108   632

103         629
110        ⁷512

103         629
d112      ²523

103         629
113       ¹680

103         629
p116      ¹575
p116      ⁴575

103         629
117       ¹276
j 117      ⁴277
117       ⁷467

2. There being nothing in the will providing that the share of a deceased child should go to the survivors, or any of them, in case such child should die without issue, nor any disposition of the share of any such child dying without issue, nor anything to indicate that by the use of the words "deceased child" the testator meant a child who should survive him and then die prior to the death of testator's widow, the words "deceased child" refer to such of testator's children, if any, as should die before he did.

3. There being no uncertainty in the will as to the persons in whom the remainder vests, the trustees took only an estate commensurate with the equitable estate, subject to the termination of the trust. The remainder did not vest in the trustees, and, the disposition relating back to the testator's death, the vesting in the remaindermen was of that date.

4. Under testator's will, except as therein provided and subject to the trusts and limitations therein contained, the reversionary and equitable interests in the estate became vested, immediately upon the testator's death, in his six children then living, equally, share and share alike, and upon the death of one of them, without issue, his share passed to his widow, as his devisee and legatee, and she thereupon became entitled to the same share in the rents, issues, profits, and income thereof and the same share of the residue of the estate, upon final division thereof, as her husband would have been entitled to if he were still living.

5. In construing wills, if futurity is annexed to the substance of the gift, the vesting is suspended, but, if it appears to relate to the time of payment only, the legacy vests *instanter*, and words directing division or distribution between two or more objects at a future time are equivalent to a direction to pay.

6. In the construction of wills, the law, in doubtful cases, leans in favor of an absolute, rather than a defeasible, estate; of a vested, rather than a contingent, estate; of the primary, rather than the secondary, interest; of the first, rather than the second, taker, as the principal object of the testator's bounty; and of a distribution as nearly conformed to the general rules of inheritance as possible.

7. A judgment in such actions providing for the allowance to the respective parties of counsel fees, payable out of the estate, is error. Only taxable costs and disbursements can be recovered.

APPEALS from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Reversed on both appeals.*

June 17, 1891, Ex-Gov. Harrison Ludington died, leaving a will executed December 27, 1887, and which was admitted to probate September 2, 1891. This is an action brought by the executors and trustees against all other parties interested, to construe that will. The will contains, among other things, in effect, the following provisions:

I give to my wife, Emeline M., the use of my homestead now occupied by me, so long as she shall desire to occupy the same, the taxes thereon to be paid out of my estate; also, the use of all the household furniture, horses, carriages, and appointments connected therewith, so long as she shall occupy such homestead. In case she removes therefrom, she may have and take for her use such articles of household furniture as she may select, excepting only the paintings known as the Marine Scene, Landscape, and the Picture of Cattle, and the silver that belonged in the family prior to our marriage. In case my wife shall remove from such homestead, my executors are authorized and directed to sell and convey the same so soon as they reasonably may, and until then to rent the same. In case such premises should be so sold during the life of my wife, I direct my executors to pay to her, and I bequeath to her, from the proceeds thereof, $5,000. I also give to my wife and direct my executors to pay to her during her life, from the annual income of my estate, $3,000 per annum, payable to her quarterly in advance. I also give and bequeath to my wife the further sum of $10,000.

The foregoing provisions in favor of my wife are in lieu of all dower and right of dower and of all interest in my estate upon her part, and in full of all claims and demands against the same of every nature and kind soever. These provisions for my wife have been made after consultation with her, and are such as we both consider to be equitable and just.

I give and bequeath to my executors and their successors

in trust the thirteen acres of land in Wauwatosa known as the Brown tract, in trust, however, to receive the rents, issues, and profits thereof until *Harrison Ludington*, the eldest son of Frederick Ludington, shall attain the age of twenty-one years, when I give and devise the same to him, and direct my executors to convey the same to him absolutely, and to account to him for all income received by them therefrom, but to permit his father, *Frederick Ludington*, to farm and use the land, if he shall so desire, during his son's minority, upon his paying the taxes thereon during such time. In case said *Harrison Ludington* should die before attaining the age of twenty-one years, then I give and devise such land and direct my executors to convey the same to his surviving brothers and sisters; and failing such survivorship, I give and devise the same, and direct my executors to convey the same, to his father, *Frederick Ludington*.

Except as otherwise designated herein, I give, devise, and bequeath unto my executors and to their successors in trust all my estate, real, personal, and mixed. In trust, however, to invest and keep invested the same and to receive the rents, issues, and profits thereof, and during the lifetime of my wife, out of such rents, issues, and profits, to first pay to my wife the annuity provided; and secondly to pay and distribute the remainder of such annual rents, issues, and profits semi-annually among all my children equally, share and share alike, the issue of any deceased child taking by representation the share thereof which his, her, or their parent would have taken if living, and upon the death of my wife, except as to the particular property hereinbefore mentioned, to divide my estate equally among all my children, share and share alike, the issue of any deceased child of mine to take by representation the share which his, her, or their parent would have taken if living.

And, for the purposes of the trust hereby reposed, my executors and trustees and their successors in trust are author-

ized and empowered, except as hereinafter limited, to sell
and convey any and all personal property and any and all
real estate of which I may die possessed or seised and con-
vert the same into money and invest and keep invested the
same for the purposes of the trust herein specified, and gen-
erally for such purposes, and in their discretion, to convert
realty into personalty and personalty into realty. I, how-
ever, direct that my stock in the Ludington, Wells & Van
Schaick Company, in the Lumbermen's Mining Company,
and in the Menominee River Manufacturing Company shall
be held by my executors and trustees and not disposed of
during the life of my wife and my youngest child surviving
at my death, except that if they or either of them should
survive the first day of April, 1893, then such stocks may be
sold by my executors and trustees if they shall so deem ad-
visable.

My executors and trustees shall not have the power or
authority to sell or convey (except by way of mortgage for
the purpose of rebuilding) my property known as lot 6 in
block 2 in the Seventh ward, and lots 1 and 2 in block 58
in the Fourth ward, of Milwaukee, during the lives of my
wife and of my youngest child surviving at my death, but
shall receive the rents, issues, and profits thereof and distrib-
ute and divide the income thereof as hereinbefore provided
with respect to the general income of my estate; and they
are authorized and empowered to mortgage said property
or any part thereof should they deem it advisable so to do.
If my wife and my youngest child surviving at my death, or
either of them, shall survive April 1, 1908, in such case my
executors and trustees and their successors in trust are au-
thorized and empowered to sell and convey said premises,
or any of them, and convert said property into money.

All of my property, except the specific bequests, devises,
and legacies herein provided, shall, at the death of my wife,
as to all thereof except the specific real and personal prop-

·erty required to be retained until the happening of certain mentioned contingencies, and as to such excepted property upon the happening of such contingencies; be divided equally among all my children, share and share alike, the issue of any deceased child to take by representation the share or part his, her, or their parent would have taken if living. In such division no advancement or gift to any of my children prior to January 1, 1883, is to be considered or taken into account, but all sums advanced and charged by me to either of my children since January 1, 1883, are to be deemed advancements to such child, and to be taken into account in such distribution. In case of any partial distribution of my estate among my children, my executors and trustees are authorized to deduct any advancement to any child, in instalments as they may deem just, so that none of them ·shall be deprived of a fair annual income for his or her support.

I hereby nominate and appoint Anthony G. Van Schaick and *James E. Patton* executors and trustees of this my last will and testament. . . . In case of the death or resignation of my executors or trustees, or either of them, I authorize my surviving children to fill any vacancy from time to time, as often as it shall occur, by the choice and appointment of a successor in the manner therein designated. Failing such choice and appointment for sixty days, the judge ·of the probate court is to appoint a suitable person or persons.

At the time of the death of the testator, he left, him surviving, his widow, Emeline M., and six children by a former wife, to wit, *Frederick,* who had a wife and three ·children, including *Harrison Ludington; Sarah E.,* wife of the plaintiff *James E. Patton,* who had four children and two grandchildren; *Ellen L.,* who had a husband and four ·children; *Clara,* who had a husband and five children; *Frances L.,* who had a husband and four children; and Har-

rison Ludington, Jr., who was at the time unmarried, but who subsequently married the defendant *Emma Blessing Ludington*, and died November 15, 1895, without issue, leaving, him surviving, his widow, as his sole heir at law, and also leaving a will, which was duly admitted to probate, and by which he gave, devised, and bequeathed all his property, real and personal, to his widow, *Emma Blessing Ludington*, and appointed her the executrix thereof.

Upon the trial of the issues made by the complaint and the separate answer of the defendant *Emma Blessing Ludington*, the court found, in addition to the facts admitted, as matters of fact, that the estate of Harrison Ludington, deceased, was upwards of half a million dollars in value, and consisted of both real and personal property,— about one half being real and the other half personal property. And as conclusions of law the court found, in effect: (1) That in and by the will the testator devised and bequeathed to his trustees, after the payment of the specific legacies in the will provided for, all his estate, real, personal, and mixed, and that such trustees thereupon became vested with the absolute title thereto, and to the whole thereof; (2) that no title, right, or interest in any part of such estate so devised and bequeathed to such trustees was by the will vested in any of the children of the testator him surviving, and that the interest of such children is and was contingent upon their surviving the time or times of distribution provided for in the will; (3) that in case any of his children died before any period or periods of distribution should arrive as therein provided, without leaving issue, his or her contingent interest in such estate should cease, and lapse into the body or *corpus* of the estate; (4) that the contingent interest of Harrison Ludington, Jr., so lapsed at his decease, and that from and after the time of his decease it was and is the duty of the trustees to divide the profits and income thereof among the remaining children of the testator, or in case of the death of

any of such children leaving issue, to their issue by right of representation, as in the will provided; (5) that *Emma Blessing Ludington* takes and has no interest whatever in the estate, either as executrix, widow, or sole heir at law of her husband, Harrison Ludington, Jr.; (6) that the direction in the will as to the sale of certain stocks after April 1, 1893, is permissive merely, and the trustees are at liberty to sell and dispose of the same, or not, as they shall deem most advisable; that in case of the sale of such stocks or any of them the trustees are to hold and retain the proceeds of such sale as a part of the body of the estate, and not to distribute the same or any part thereof until the death of the widow; (7) that the directions in the will not to sell or dispose of certain real estate therein specifically described before April 1, 1908, do not require a sale of such real estate at or immediately after that date, if the trust upon which it is held still continues, but that after that date such trustees are at liberty to sell and dispose of such real estate, if they shall deem it advisable so to do, and that the proceeds thereof, in case such sale is made, shall be held and added to the body of the estate, and not distributed until the termination of such trust; (8) that the taxable costs and disbursements, including taxable attorney's fees, of each and every party to this action in the trial court be paid out of the estate, and that the county court make such allowance out of the estate to the respective parties, including *Emma Blessing Ludington*, as in the exercise of a sound discretion may be just, and that the sums so to be allowed be paid out of the estate. Judgment was thereupon entered in accordance with such findings.

The defendant *Emma Blessing Ludington* appeals from each and every part of the first seven paragraphs of such judgment, and particularly those parts wherein it is adjudged, in effect, that the trustees thereupon became vested with the absolute title thereto and all thereof; that no title, right, or interest in any part of the estate ever became vested in any

of the children of the testator him surviving; and that the
contingent interest of Harrison Ludington, Jr., in such es-
tate lapsed at the time of his death, and thereupon passed
into and became a part of the *corpus* of the estate. The
plaintiffs, as such trustees, appeal from so much of the eighth
paragraph of the judgment as decrees that the taxable costs
and disbursements, including taxable attorney's fees, of
*Emma Blessing Ludington* be paid out of the estate, and
that the county court make such allowance out of the es-
tate to *Emma Blessing Ludington* as in the exercise of a
sound discretion may be just, and that the sum to be allowed
to her be paid out of the estate.

*John H. Burke*, attorney, and *Charles Quarles*, of counsel,
for the defendant *Emma Blessing Ludington*.

For the plaintiffs as respondents there was a brief by *Blood-
good, Kemper & Bloodgood*, attorneys, and *Jackson B. Kem-
per*, of counsel; for the plaintiffs as appellants there was a
brief by *Turner, Bloodgood & Kemper*, attorneys, and *Wink-
ler, Flanders, Smith, Bottum & Vilas*, of counsel; for the de-
fendants *Patton, White, Eliot, Ludington*, and *Van Schaick*,
as respondents on the appeal of *Emma Blessing Ludington*,
there was a brief by *Winkler, Flanders, Smith, Bottum &
Vilas;* and the cause was argued orally by *Mr. Kemper* and
*J. G. Flanders*.

CASSODAY, C. J.   Aside from the Brown tract of thirteen
acres of land in Wauwatosa, specifically devised to his grand-
son *Harrison Ludington*, and his father, *Frederick*, and which
is not involved in this controversy, the general purposes of
the testator, as expressed in his will, seem to have been to
provide for his wife a comfortable home and support during
her life, in lieu of all dower and all right and interest in his
estate; and for that purpose, and others indicated in the
will, his trustees were authorized and empowered, during
the life of his wife, to sell and convey any and all personal

property and any and all real estate, and convert the same into money, and invest and keep invested the same for the purposes of the trust therein specified, and generally, for such purposes, and in their discretion, to convert realty into personalty and personalty into realty, subject, however, to the provisions that they were not authorized or directed to sell and convey the homestead, unless his wife should remove therefrom and reside elsewhere; that they should not sell his stocks, mentioned, until April 1, 1893, unless his wife and his youngest child, *Frances L.*, surviving at the time of his death, should both die prior to that date, and that they should not sell or convey the three lots described (which for convenience we will designate as the business blocks) until April 1, 1908, unless his wife and *Frances L.* should both die prior to that date; and that, subject to such conditions, his trustees should, during the life of his wife, receive the rents, issues, and profits from his estate, real, personal, and mixed, and out of the same first pay to his wife the annuity mentioned, and secondly pay and distribute the remainder of such annual rents, issues, and profits, semi-annually, "*among all*" his "children equally, share and share alike, the issue of any deceased child taking by representation the share thereof which his, her, or their parent would have taken, if living," and upon the death of his wife, and subject to such conditions and the specific bequests and devises mentioned in the will, they were to divide his "estate equally *among all*" his "children, share and share alike, the issue of any deceased child" of his "to take by representation the share which his, her, or their parent would have taken if living;" and the will expressly provides that in such divisions no advancement or gift to any of his children, prior to January 1, 1883, was to be considered or taken into the account, but that all sums advanced and charged by the testator to either of his children after the day and year last mentioned were to be deemed advancements to

such child, and to be taken into account in such distribution. The general purpose of the testator to treat all his children alike is thus strikingly manifest. Harrison Ludington, Jr., lived for four years and five months after the death of his father. During that time the net income of the estate was distributed among the children semi-annually, the last distribution having been made November 9, 1895, six days prior to the death of Harrison Ludington, Jr. Since that time such distribution has been confined to the five living children of the testator, on the assumption that Harrison Ludington, Jr., never had any vested interest in the estate whatever, and that he lost all prospective interest in the estate by having died prior to his stepmother, when by the terms of the will the final distribution of the *corpus* of the estate was to be made, subject, however, to the limitation on the power of the sale of stock until April 1, 1893, and of the business blocks until April 1, 1908. As indicated, the will declares that "the issue of any deceased child" of the testator was "to take by representation the share which his, her, or their parent would have taken if living," not only of the *corpus* of the estate on the death of the widow, but also of the remainder of the "annual rents, issues, and profits, semi-annually," after satisfying the specific bequests mentioned. Upon the one hand it is contended that the words "deceased child," thus mentioned, refer only to a child who should die prior to the testator, and on the other hand it is contended that they also refer to a child who should survive the testator, and then die prior to the death of the widow. Which of these contentions is correct?

As soon as the will was admitted to probate, it took effect, by way of relation, as of the death of the testator. *Bridge v. Ward,* 35 Wis. 687; *Scott v. West,* 63 Wis. 552; *Graves v. Mitchell,* 90 Wis. 314; *In re Davis's Will, ante,* p. 455. The language of the will must be construed with reference to the time of the testator's death. *Id.; Tucker v. Bishop,* 16

N. Y. 404. It has frequently been held that, in the absence of other words showing a contrary intention, the words "the death of a child," in a clause of a will similar to the one last above quoted, refer to a death during the lifetime of the testator. *Livingston v. Greene*, 52 N. Y. 118; *Embury v. Sheldon*, 68 N. Y. 227; *Robert v. Corning*, 89 N. Y. 225; *In re Mahan*, 98 N. Y. 372; *Quackenbos v. Kingsland*, 102 N. Y. 128; *Vanderzee v. Slingerland*, 103 N. Y. 47; *Van Brunt v. Van Brunt*, 111 N. Y. 178; *In re Tienken*, 131 N. Y. 391; *In re Brown*, 154 N. Y. 313. In this last case it was expressly held that "when a devise or bequest is made to a class, as 'to children of children,' the class will, in the absence of a definite intention disclosed by the will, be ascertained and determined as of the death of the testator; and, if the estate then vests, it vests in the individual beneficiaries as tenants in common." To the same effect, *Smith v. Ashurst*, 34 Ala. 208; *Springer v. Congleton*, 30 Ga. 976; *Johnes v. Beers*, 57 Conn. 295; *Whall v. Converse*, 146 Mass. 345. Thus, it is stated by a standard text writer, in effect, that "a devise or bequest to the children of A., or of the testator, means *prima facie* to those of that class in existence at the testator's death, provided there be any at all to answer that description; and this rule extends to grandchildren, issue, brothers, nephews, and cousins;" and such presumption is not to be varied, whether an aggregate sum be given to the class, or a certain sum to each member of the class. Schouler, Wills, § 529. In the case at bar there is nothing in the will to indicate that by use of the words "deceased child" the testator meant a child who should survive him and then die prior to the death of his widow. On the contrary, it clearly appears from the will that he meant that, if any of his children should die before he did, then the issue of such child, if any, should take "the share which his, her, or their parent would have taken if living." The manifest purpose of that clause in the will was to prevent such

share from lapsing, as at common law it would have done had no such clause been inserted, and had such child died prior to the death of the testator. That was settled 120 years ago in the celebrated case of *Ackroyd v. Smithson*, 1 Brown, Ch. 503; *S. C.* 7 Eng. Rul. Cas. 8; *Schaffer v. Kettell*, 14 Allen, 528. Since a will never goes into effect until the death of the testator, it is very obvious that a bequest or devise contained in a will cannot take effect in favor of persons who die before the testator. *Downing v. Marshall*, 23 N. Y. 370. To obviate such effect, our statute, taken substantially from New York, as indicated in the last case cited, provides that, "when a devise or legacy shall be made to any child or other relation of the testator and the devisee or legatee shall die before the testator, leaving issue who shall survive the testator, such issue shall take the estate so given by the will in the same manner as the devisee or legatee would have done if he had survived the testator, unless a different disposition shall be made or directed by the will." Stats. 1898, sec. 2289. We must hold that by the words "deceased child," contained in the will, the testator referred to such of his children as should die before he did. But, as indicated, none of his six children died before he did. On the contrary, they are all still living, except Harrison Ludington, Jr., who died without issue. By the will the net income of the estate was to be distributed semi-annually, and the *corpus* of the estate was to be finally divided among all of the testator's children, share and share alike, the issue of any deceased child to take the share which his, her, or their parent would have taken if living; but there is nothing in the will as to such share going to the survivors, or any of them, in case any of such children should die without issue, nor does the will anywhere undertake to make any disposition of the share of any such child dying without issue. It is not the case, therefore, where the share of one dying without issue goes, by the terms of the will, to the survivors of

the class, as in *Scott v. West*, 63 Wis. 533, where the testator, after the death of his two daughters, by the fourth clause of his will devised and bequeathed all the remainder of his estate to his "surviving grandchildren and to the legal issue of any deceased grandchild." See, also, *Campbell v. Stokes*, 142 N. Y. 23.

In support of the judgment on the merits it is contended, and the trial court held, that upon the death of the testator no right, title, or interest in any part of the testator's estate vested in any of his children, but that the right, title, and interest of all of his estate, real, personal, and mixed, became, on his death, vested in his executors and trustees and their successors in office, and that they took the absolute title thereto and the whole thereof. Such ruling and contention is challenged by the widow of Harrison Ludington, Jr., on the ground that upon the death of the testator, and aside from the specific devise and specific bequests mentioned, the entire equitable right, title, and interest of the estate passed to, and became vested in, the six children equally, share and share alike, subject only to the execution of the trust. As indicated, and with the exceptions mentioned, the the testator by his will gave, devised, and bequeathed all his estate to his executors and their successors in trust during the life of the testator's widow, for the' uses and purposes therein mentioned, with authority and power, in their discretion and for the purposes of the trusts therein specified, to sell and convey, and to convert personalty into realty and realty into personalty, and to invest and keep the same invested, for the purposes mentioned, subject to the limitations and directions therein specified. The validity of the trust is conceded. Stats. 1898, sec. 2081.

Our statutes in respect to the "nature and qualities of certain estates," and "of uses and trusts," are taken almost entirely from New York. Id. ch. 95, 96; 1 R. S. N. Y. [1829] pt. II, ch. I, tit. II, arts. 1, 2. Among others, they contain

provisions to the effect that "estates, as respects the time of their enjoyment, are divided into estates in possession and estates in expectancy;" that "an estate in expectancy is where the right to the possession is postponed to a future period;" that "estates in expectancy are divided into 'future estates and reversions;'" that "a future estate is an estate limited to commence in possession at a future day;" that "when a future estate is dependent upon a precedent estate it may be termed a remainder, and may be created and transferred by that name;" that "future estates are either vested or contingent;" that "they are vested when there is a person in being who would have an immediate right to the possession of the lands upon the ceasing of the intermediate or precedent estate;" that "they are contingent whilst the person to whom, or the event upon which, they are limited to take effect, remains uncertain;" that "expectant estates are descendible, devisable and alienable in the same manner as estates in possession;" that "where an expectant estate . . . is created by devise, the death of the testator shall be deemed the time of the creation of the estate;" that "a devise of lands to executors or other trustees to be sold or mortgaged, where such trustees are not also empowered to receive the rents and profits, shall vest no estate in the trustees; but the trust shall be valid as a power," etc.; that "every express trust, valid as such in its creation, except as herein otherwise provided, shall vest the whole estate in the trustees, *subject only to the execution* of the trust; and the person for whose benefit the trust was created shall take no estate or interest in the lands, but may enforce the performance of the trust;" but this last "section shall not prevent any person creating a trust from declaring to whom the lands to which the trust relates shall belong in the event of the failure or determination of the trust, nor shall it prevent him from granting or devising such lands subject to the execution of the trust; and every

such grantee shall have a *legal estate* in the lands as against all persons except the trustees and those lawfully claiming under them;" and that "whenever an express trust is created every estate and interest *not embraced in the trust and not otherwise disposed of* shall remain in or revert to the person creating the trust or his heirs as a legal estate." Stats. 1898, secs. 2031–2035, 2037, 2059, 2060, 2065, 2082, 2086–2088.

Under such statutes it is well settled in New York "that the trustees take a legal estate commensurate with the equitable estate, and that outside of that there may be remainders and future estates, or powers of sale adequate to terminate the trust." *In re Tienken,* 131 N. Y. 401. See, also, *Manice v. Manice,* 43 N. Y. 363, 364, and cases there cited. In that case, as in the case at bar, there were, outside of the trust, and in the language of the statute quoted (sec. 2033), "future estates and reversions," either disposed of by the will, or passed by descent under the statute (sec. 2270). So it has been held in New York that, "where an estate is devised in trust, to provide an income for life beneficiaries, and at their death to divide among remaindermen as to whom there is no uncertainty, the trust estate vests in the trustees, not absolutely, but subject to the remainder over on the termination of the trust, and the remainder does not vest in the trustees at all." *In re Brown,* 154 N. Y. 314. So it has been held in that state: "Where the apparent intention of the testator is that remainders shall vest in persons as to whom there is no uncertainty, subject to the life estate or estates created by the will, . . . the disposition relates back to the time of the testator's death, and the vesting is of that date. The presence in a will of an imperative power of sale, given to the executors to be exercised at a future time, does not necessarily prevent a vesting, especially when it is apparent from the other provisions of the will that it was intended that the estate should vest pres-

ently." *Id.* This court has construed such statutes as vesting the legal estate or title in the trustees for the purposes of the trust, and vesting the equitable estate in the *cestui que trust. Baker v. McLeod's Estate,* 79 Wis. 540, 541, and cases there cited.

In some of the cases cited above, and in several hereinafter cited, it was held that the power of sale in no manner enlarged or changed the quality of the estate vested in the trustees. Under such statutes it has also been frequently held in that state, in effect, that where an estate is given, devised, and bequeathed to executors in trust to be paid over to a person or class of persons named or described, upon an event which is uncertain at the time of the creation of the estate and may never happen, or to a person or to persons then unascertainable, the right to such payment is contingent and not vested. *Gilman v. Reddington,* 24 N. Y. 9; *Manice v. Manice,* 43 N. Y. 378, 379; *Smith v. Edwards,* 88 N. Y. 92, 104; *Shipman v. Rollins,* 98 N. Y. 311; *In re Baer,* 147 N. Y. 348. But even "the general rule that, when a testamentary gift is found only in a direction to divide at a future time, the gift is future and contingent and not vested, is subordinate to the primary canon of construction, that the intent to be collected from the whole will must prevail." *In re Brown, supra; Goebel v. Wolf,* 113 N. Y. 405. The direction for the trustees to pay over or distribute the net income of the estate, or a portion thereof, annually, or at other stated periods, to the beneficiaries,— as, for instance, the children of the testator, in the case at bar,— is evidence of an intent on the part of the testator to vest the equitable estate in them immediately upon the death of the testator. *In re Brown, supra.* See, also, *Willett's Adm'r v. Rutter's Adm'r,* 84 Ky. 317; *Toms v. Williams,* 41 Mich. 565. This will be more fully supported by authorities hereinafter cited.

On the other hand, it has been frequently held, under such

statutes, in that state, in effect, that where, as here, an estate is given, devised, and bequeathed to executors in trust to collect the rents, issues, and profits or income thereof during the life of the widow, and to pay over to her annually a certain part thereof, and the balance thereof to be paid over and distributed semi-annually among all of the testator's children living at the time of his death, equally, share and share alike, and upon the death of the widow to divide the *corpus* of the estate equally among all his children, share and share alike, such estate becomes vested in such children immediately upon the death of the testator, subject, of course, to the execution of the trust. Such an estate satisfies the statute which declares, in effect, that future estates are vested when there is a person in being who would have an immediate right to the possession of the estate upon the ceasing of the intermediate or precedent estate (Stats. 1898, sec. 2037). *Saxton v. Webber*, 83 Wis. 624. Chief Justice DENIO states the rule thus: " The leading inquiry upon which the question of vesting or not vesting turns is whether the gift is immediate, and the time of payment or of enjoyment only postponed, or is future and contingent, depending upon the beneficiary arriving of age, or surviving some person, or the like. If futurity is annexed to the substance of the gift, the vesting is suspended; but, if it appear to relate to the time of payment only, the legacy vests *instanter*. . . . And words directing division or distribution between two or more objects at a future time are equivalent to a direction to pay." *Everitt v. Everitt*, 29 N. Y. 75. See *Stark v. Conde*, 100 Wis. 641. In that New York case it was held that the interest in the fund created for the benefit of the younger children vested in them immediately upon the death of the testator, though the fund was not payable to them until the youngest child attained her majority. See, also, *Embury v. Sheldon*, 68 N. Y. 227; *In re Mahan*, 98 N. Y. 372; *Van Brunt v. Van Brunt*, 111 N. Y. 178; *Bowditch v. Ayrault*,

138 N. Y. 222. It has also been held in New York that, "where by the terms of a bequest the gift is to be severed *instanter* from the general estate, and to be held by trustees for a specified time for the benefit of the legatee, and then to be paid over to him, and in the meantime the interest thereof to be paid to him, this is indicative of the intent of the testator that the legatee shall at all events have the principal, and is to wait only for the payment until the day fixed." *Warner v. Durant*, 76 N. Y. 133. In *Goebel v. Wolf*, 113 N. Y. 405, the testator gave the residue of his estate to trustees, in trust to pay one half of the net profits and income to his widow for the support of herself and her minor children, and to apply the other half in payment of mortgages, and after such payment to invest the residue for the benefit of his children; and then, after providing for an advancement to each child upon becoming of age or marrying, he directed that upon the death of his widow, and his youngest child becoming of age, his estate should be equally divided among his children; and it was "held that the gift was not to the children as a class, but each took a vested remainder in one fourth of the residuary estate, dependent upon the termination of the trust, and that the share of the one who died, with the accumulations of income therefrom, descended to his heirs or next of kin according to the nature of the property; also, that such descendants were entitled to any income that may hereafter accrue during the trust period."

So it has been held in that state that "a remainder is not to be considered as contingent in any case where, consistently with the intention of the testator, it may be construed as being vested." *Hersee v. Simpson*, 154 N. Y. 496. Even "the words 'from and after,' in a testamentary gift of a remainder, following a life estate, do not make the remainder contingent and prevent its being construed as vested, where there is nothing else on the face of the will tending to show

that the vesting of the remainder was postponed, or intended to be postponed, beyond the death of the testator." *Id.* See, also, *Wellford v. Snyder,* 137 U. S. 521; *Dale v. White,* 33 Conn. 294; *Johnes v. Beers,* 57 Conn. 295; *Scofield v. Olcott,* 120 Ill. 362; *Grimmer v. Friederich,* 164 Ill. 245; *Owens v. Dunn,* 85 Tenn. 131; *Wedekind v. Hallenberg,* 88 Ky. 114; *Marsh v. Hoyt,* 161 Mass. 459; *Reed's Appeal,* 118 Pa. St. 215; *Neilson v. Bishop,* 45 N. J. Eq. 473; *Bonnell's Ex'rs v. Bonnell,* 47 N. J. Eq. 540; *Cook v. McDowell,* 52 N. J. Eq. 351. Some of these cases are quite similar to the case at bar. Thus, in the last case cited, the testator directed his executors to sell his real estate, and invest the proceeds during the life of his widow, and upon her death divide the *corpus* of the estate between his six children, share and share alike; and in case any of his children should " die before receiving their share, leaving issue," then he gave, devised, and bequeathed " to such issue the share the parent would have taken if living." One of his children, a son, survived his father, but died without issue before he came into actual possession of any part of the estate; and it was held, in effect, that upon the death of the testator such son took a vested interest in one sixth part of the estate, which passed by his will, subject to the execution of the trust. The case of *Bonnell's Ex'rs v. Bonnell, supra,* is quite similar.

The cases in this court, so far as they have any bearing upon the question presented, are in harmony with the views expressed. In *Baker v. McLeod's Estate,* 79 Wis. 534, the testator died leaving a will, executed a week before, and in and by which he gave, devised, and bequeathed all his estate to a trustee, in trust, with power of sale and reinvestment, and to pay debts and expenses, and to pay Miss Ritchie, who had had the care of his little girl, Annie May, then less than four years old, since the death of his wife, and to pay and apply the rents, profits, and income thereof to the maintenance and education of Annie May until she should be-

come twenty-one years of age, and then the residue to be paid over and transferred to her, but that, in case Annie May should die under twenty-one years of age, then such remainder should immediately be paid, applied, and disposed of as follows: $2,000 to Miss Ritchie, if living; $8,000 to a church named; and the balance to the executors and trustees. Annie May married, and subsequently gave birth to a little boy, named George, and then died before she was twenty-one years of age; and, in construing the will, this court held that the estate vested in Annie May immediately upon the death of her father, subject only to the condition that, in case she should die under age and *without issue*, then the gift over to Miss Ritchie, the church, and executors should become effectual. Following the adjudications in England and this country, the words "without issue" were supplied by construction. *Dunlop v. Greer* [1899], 1 Ir. Rep. Ch. 324. In *Burnham v. Burnham*, 79 Wis. 557, the testator, by his will, executed April 22, 1874, after making certain bequests, and subject to certain provisions, gave to his wife an estate for life, with remainder to his children, including Daniel G., who became an inebriate and spendthrift, and was put under guardianship. Thereupon, on February 3, 1883, the testator executed a codicil to his will, wherein he declared that his son Daniel G. should not have nor receive any part of his estate unless within five years after his death Daniel G. should reform and become a sober and respectable citizen, of good moral character, of which his executors were to be the sole judges; that the executors were to hold the share which would otherwise go to Daniel G. in trust during the five years, and pay out of the same $200 a year for the support and education of each of Daniel G.'s children, etc. March 2, 1889, the testator died, leaving an estate of $1,000,000. April 4, 1889, the will and codicil were admitted to probate. January 18, 1890, Daniel G. died intestate, leaving a widow and three children. In construing the will, this court held,

in effect, that, upon the death of the testator, Daniel G.'s share of the estate immediately vested in him, subject to be divested by failure to perform the conditions named, and that the mere fact that the conditions were possible at the time the will went into effect, but afterwards became impossible by the act of God, did not operate to divest the estate, but upon the death of Daniel G. the same became absolute. *Stark v. Conde*, 100 Wis. 643. "In the construction of wills, the law, in doubtful cases, leans in favor of an absolute, rather than a defeasible, estate; of a vested, rather than a contingent, one; of the primary, rather than the secondary, interest; of the first, rather than the second, taker, as the principal object of the testator's bounty; and of a distribution as nearly conformed to the general rules of inheritance as possible." *Smith's Appeal*, 23 Pa. St. 9; *Burnham v. Burnham*, 79 Wis. 566.

On the death of the testator, Harrison Ludington, Jr., was living, and soon after married, and after a few years died without issue, leaving a will, which was admitted to probate, and in and by which he gave, devised, and bequeathed all his property to his widow, the defendant *Emma Blessing Ludington.* Except as provided in the will, and subject to the trusts and limitations therein contained, and for the reasons given, we must hold that immediately upon the death of the testator the reversionary and equitable interests in the estate became vested in his six children then living, equally, share and share alike, and upon the death of Harrison Ludington, Jr., November 15, 1895, his share thereof passed to his widow, as devisee and legatee, and that she thereupon became entitled, and is entitled, to the same share of the rents, issues, profits, and income thereof, and the same share of the residue of the estate upon final division thereof, as her husband would have been entitled to if he were still living. In other respects the will appears to have been correctly construed by the trial court.

The plaintiff, as executors and trustees, have appealed from that part of the judgment awarding costs and disbursements of each and every party to the action to be paid out of the estate, and directing the county court to make allowance to the respective parties for counsel fees out of the estate.   This court has just condemned such rulings. *In re Donges' Estate, ante,* p. 497.   What is there said by my Brother DODGE fully covers the questions involved in the appeal of the plaintiffs in the case at bar.   Further discussion is unnecessary.

*By the Court.*— The judgment of the circuit court is reversed on both appeals, and the cause is remanded with direction to enter judgment in accordance with this opinion. Taxable costs and disbursements are to be allowed in favor of the defendant *Emma Blessing Ludington* and against the plaintiffs, both in this court and the trial court; the same to be payable out of the estate.