[Civ. No. 8668.  First Appellate District, Division Two.—April 12, 1933.]

E. A. LYNCH, as Trustee in Bankruptcy, etc., Appellant, v. DANIEL J. CUNNINGHAM et al., Respondents.

Aaron Levinson and Louis Swarthe for Appellant.

Michael F. Shannon and Thomas A. Wood for Respondents.

DOOLING, J., *pro tem.*—This is an appeal by the plaintiff, as trustee in bankruptcy of Rose Murray, from a judgment denying equitable relief. Rose Murray is a daughter of one Dan Cunningham, who died in 1912. The estate of Dan Cunningham was distributed in 1913 in undivided interests, one-half to Margaret Cunningham, his widow, and one-twelfth to each of his six children, including Rose Murray. On May 10, 1923, the mother and the six children created a trust designated as the Cunningham Estate Trust. In the creation of this trust the entire property, which consisted of real estate, was conveyed to two of Rose Murray's brothers, Daniel J. Cunningham and Hugh P. Cunningham as trustees. By this deed of trust it was provided that such trustees should have the management, care, custody and control of said property and receive the rents, income and revenue thereof and pay all expenses in connection with such property; that the trustees should have the power to sell and dispose of any portion or portions of the trust property and to invest and re-invest the proceeds subject to the other provisions of the trust deed; to borrow money and for that purpose mortgage, pledge or hypothecate the property; to grant and acquire, create and release easements,

make leases and otherwise manage the trust property. The trust was expressly provided not to be terminable until the expiration of twenty years except in the event of the death of all the beneficiaries prior thereto. It was further provided that the trustees should pay the net income to the beneficiaries in the proportion of their interests. The deed of trust provided that in case of the death of Margaret Cunningham her portion of the net proceeds should thereafter be paid to the other beneficiaries in equal portions, and in the event of the death of any other beneficiary his portion of the net income should be paid in equal portions to the issue of his body by right of representation and in the event of his death without issue to the other beneficiaries and to the issue of any other original beneficiary then deceased. At the expiration of the trust period the trustees are required to transfer, pay over and convey all of the trust property remaining in their hands to the persons who shall then be beneficiaries in the proportions provided in the trust deed.

After the creation of this trust, judgment was recovered against Rose Murray by one Hileman for $2,940.74. A writ of execution was issued on this judgment on November 10, 1927, and levied upon all moneys, goods, credits, effects, debts due or owing, or any other personal property belonging to the defendant, Rose Murray, in the possession or under the control of Daniel J. Cunningham and Hugh P. Cunningham, trustees of the Cunningham Estate Trust. This levy was made by delivering to Hugh P. Cunningham a copy of the writ, together with the appropriate demand required by our code in the case of the levy upon personal property in the possession of another. Sale at execution was had pursuant to this levy and the property was bought at such sale by Hugh P. Cunningham, who was acting for his mother, Margaret Cunningham, for the amount of the judgment and accrued costs. By virtue of such sale Margaret Cunningham claims to have acquired all of the interest of Rose Murray in and to the trust property, the value of which is variously estimated from $69,000 to considerably over $100,000.

Rose Murray originally commenced this action for an accounting. After her adjudication as a bankrupt the trustee in bankruptcy was substituted as plaintiff and by amend-

ments to the complaint sought to have the execution sale set aside and prayed for a judgment requiring the payment to plaintiff of all net income received from Rose Murray's interest in the trust and trust property subsequent to the execution sale, less the amount paid by Margaret Cunningham at the sale on execution.

Various attacks are leveled by appellant against the judgment appealed from. It is claimed by him that the sale price was grossly disproportionate to the value of the property and that this, coupled with a claimed confidential relationship existing between Margaret Cunningham and her daughter Rose Murray, justified the setting aside of the sale. It is claimed that the buying of the property at the execution sale by one of the trustees acting for his mother was a breach of his trust as trustee for Rose Murray and the sale was thereby rendered voidable by her. It is claimed that the sale was a fraud upon the other creditors of Rose Murray and voidable for that reason. It is likewise urged that Rose Murray had an equitable estate in the *corpus* of the trust; that the *corpus* being real property this equitable estate was an interest in real property and should have been levied upon as an interest in real property (Code Civ. Proc., sec. 542, subd. 2), in which event Rose Murray would have had a right of redemption (Code Civ. Proc., secs. 700a, 701, 702). Certain other minor points are urged by appellant which we do not deem it necessary to set out here.

It is plain that if any one of these enumerated points is good it will necessitate a reversal of the judgment and will also render unnecessary the consideration of any of the other points urged by appellant. For the reason that we have reached the conclusion that Rose Murray had an equitable estate in the *corpus* of the trust which was an interest in real property we shall confine our consideration to that point alone.

At the outset we are confronted by the claim of respondents that under section 863 of the Civil Code Rose Murray had no estate in the *corpus* of the trust but only a chose in action enforceable against the trustees. This section of the Civil Code reads: "Except as hereinafter otherwise provided, every express trust in real property, valid as such in its creation, vests the whole estate in the trustees, subject only to the execution of the trust. The beneficiaries take

no estate or interest in the property, but may enforce the performance of the trust."

The proper construction of this section was the subject of elaborate consideration in *Title Ins. & Trust Co.* v. *Duffill*, 191 Cal. 629 [218 Pac. 14, 15]. In that case one Harry Duffill had entered into an agreement with his wife to create a trust for her benefit in an undivided one-fourth of any property which he might receive from his mother, the income from such trust to be paid to the wife. Thereafter the mother died and by her will created a testamentary trust in certain of her property with certain of the income therefrom to be paid to Harry Duffill until his son Albert should reach the age of twenty-one years, at which time one-half of the *corpus* of the trust was to be transferred and conveyed to Harry Duffill. In that trust, as in the one which we are considering, the trustee was given the power "to sell, lease, improve or exchange, invest or reinvest any or all of said property". It was the claim of Harry Duffill that the only property which he received from his mother's estate and to which the trust created by the agreement with his wife could attach as the *corpus* of the trust created by that agreement was the income from the trust created by his mother. This would have resulted in the payment of one-fourth of such income as received by Harry Duffill to the trustee for his wife to be held by such trustee in trust to pay only the income therefrom to the wife during the period provided in the agreement between them. It was the claim of the wife, on the other hand, that Harry Duffill took an immediate vested equitable estate in the *corpus* of the trust created by his mother, that this equitable estate was property received from his mother within the meaning of the agreement creating the trust for the wife's benefit, and hence that one-fourth of such equitable estate was impressed with the trust in her favor and became the *corpus* of the trust estate created for her benefit, and that she was accordingly entitled to receive as income from such one-fourth of Harry Duffill's equitable estate one-fourth of the income which Harry Duffill received from the trust created by his mother. The Supreme Court decided in favor of the contention of the wife. We quote at length from that opinion because of the careful and exhaustive consideration given by the Supreme Court to the questions there involved:

"The theory that Harry Duffill received at his mother's death a beneficial interest in the property belonging to her, and that his subsequent receipts, therefore, are not directly from her, but are receipts from the income of his property, finds support in what we believe to be the status of the equitable interest and estate of a *cestui que trust* in property in this state. It is worthy of note that in the distribution of the mother's estate in this very matter Harry Duffill's equitable estate was recognized beyond the provisions of his mother's will. Mrs. Duffill intended that he should receive one-half of the income from the trust created by her, but upon the void condition that it should be accumulated during Albert's minority. As was pointed out by this court, it was undoubtedly the intention of the testatrix that the income should be retained and go with the *corpus,* to be held by the testamentary trustee and administered as principal, but this intention was frustrated by her unlawful wish for accumulation of that portion of the fund, and it was properly decreed that Harry should enter upon its immediate use and enjoyment. (*Estate of Duffill*, 180 Cal. 748, 761 [183 Pac. ·337].) While it is beyond dispute that by the terms of the will of Eugenie A. Duffill the legal title to all property constituting the *corpus* of the testamentary trust created by her vested in the Los Angeles Trust and Savings Bank, as trustee, immediately upon her death, and that such title was declared and confirmed by the decree of distribution of her estate (*Western Pac. R. R. Co.* v. *Godfrey,* 166 Cal. 346, 349 [136 Pac. 284, Ann. Cas. 1915B, 825]), it is equally beyond dispute that on her death there was also vested in Harry Duffill an equitable estate or beneficial interest in her property independent of the legal estate which vested in the testamentary trustee. In England, devises of trust, under this doctrine of an equitable interest, are distinct substantive devises, standing on their own basis, independent of the legal estate which is 'nothing but the shadow which always follows the trust *res* in the eye of a court of equity'. (*Attorney-General* v. *Downing,* Wilm. 1 [Eng.] 22 [97 Eng. Reprint, 1].) In a still earlier English case (*Burgess* v. *Wheate,* 1 Eden, 177), Lord Keeper Henly (page 251) said that the trust should be considered in equity as the 'real estate' and the 'trustee should take no beneficial interest that the *cestui que trust* can enjoy'. In

the same case, Lord Mansfield said (pages 217, 226): 'Now trusts are considered . . . as the real ownership of the land . . . the same as the land and trustee . . . is. in no event to take a benefit.' The generally accepted rule in this country also is that 'under the system now prevailing the *cestui que trust* is regarded as the real owner of the property, the trustee being merely the depositary of the legal title. His is not a property right, but a legal duty founded upon a personal confidence; his estate is not that which can be enjoyed, but a power that can be exercised.' (39 Cyc. 203.) Such estates 'are in equity what legal estates are in law; the ownership of the equitable estate is regarded by equity as the real ownership, and the legal estate is, as has been said, no more than the shadow always following the equitable estate, which is the substance, except where there is a purchaser for value and without notice who has acquired the legal estate.' (1 Pomeroy's Equity Jurisprudence, 4th ed., sec. 147; Underhill on Trusts and Trustees, 4th ed., p. 6, art. II.)

"Respondents, it will be remembered, contend that Harry Duffill took no estate or interest in his mother's property, but only the right to enforce the performance of the trust. Such contention is largely based on section 863 of the Civil Code, which provides that except as in the code provided 'every express trust in real property, valid as such in its creation, vests the whole estate in the trustees, subject only to the execution of the trust. The beneficiaries take no estate or interest in the property, but may enforce the performance of the trust.' Aside from the fact that but little of the property held under the testamentary trust is *real* property rendering the code section of but little moment in this discussion, the construction placed upon its provisions by respondents does not follow. The section was adopted as part of the Civil Code in 1872. It has been construed by this court many times, and the conclusion has been firmly established that 'the estate which a trustee takes by virtue of section 863 is not necessarily a fee, but only such estate as is required for the execution of his trust'. (*Keating* v. *Smith*, 154 Cal. 186, 192 [97 Pac. 300]; *Morffew* v. *San Francisco etc. R. R. Co.*, 107 Cal. 587, 595 [40 Pac. 810].) This rule that the trustee takes only such an estate in the trust property as is necessary to the discharge of his trust

duties refers directly to the quantity of his estate in the property, as, for instance, an estate for years, an estate for life, or an estate in fee. (*Estate of Pichoir,* 139 Cal. 682, 688 [73 Pac. 606].) In *Gray* v. *Union Trust Co.,* 171 Cal. 637, 640 [154 Pac. 306, 308], a substantive 'equitable estate' was recognized to exist in one who had a 'usufructuary interest in the whole estate during her life', notwithstanding there was 'conveyed to the trustee the whole legal title, since so much (was) plainly necessary for the purposes of the trust (Civ. Code, sec. 863)', which general purposes were to give the trustor the beneficial use of the property during her life, and upon her death to see that the property went to her nominees under her will. (See, also, *Estate of Aldersley,* 174 Cal. 366, 371 [163 Pac. 206]; *Weston* v. *Weston,* 125 Mass. 268; *Crooke* v. *County of Kings,* 97 N. Y. 421, 446; *Patton* v. *Ludington,* 103 Wis. 629, 644 [74 Am. St. Rep. 910, 79 N. W. 1073]; *Williams* v. *Williams,* 135 Wis. 60 [115 N. W. 342]; *Estate of Fair,* 132 Cal. 523, 550, 571 [64 Pac. 1000, 84 Am. St. Rep. 70].)

"It were useless, we feel, to carry this discussion to greater length, or to discuss other phases of the matter and probable lines of solution of the problem here presented. Harry Duffill was vested with an equitable estate and beneficial interest in his mother's property immediately upon her death, with only such legal title lodged in the Los Angeles Trust and Savings Bank as is required for the execution of the testamentary trust. That this interest was assignable is beyond controversy. (5 C. J., p. 854; 3 Pomeroy's Equity Jurisprudence, 4th ed., sec. 1271. See, also, *Bridge* v. *Kedon,* 163 Cal. 493, 500 [126 Pac. 149, 43 L. R. A. (N. S.) 404].) Whatever may be the duration or quantity of the equitable estate vested in Harry, whether for years or for life, or in mere expectancy, he has received, and is receiving, income thereon. What condition will prevail when the testamentary trust is terminated by lapse of time or death does not now concern us. The accrued and accruing income received by Harry, including the portion paid to plaintiff, is income from Harry's own equitable interest, and is not an interest in property arising out of the mother's estate. It is therefore 'income to Martha', and should not be administered as *corpus* of the trust under the

August agreement, but should be accounted for and paid direct to appellant as income.''

It will be observed of this opinion that while the Supreme Court said that in that case but little real property was involved, nevertheless the court considered carefully the effect of Civil Code, section 863, upon such real property as was embodied in the *corpus* of the trust and it may not be said of the opinion that the discussion of this section was mere *dictum* for the reason that if section 863 had had the effect claimed for it by Harry Duffill in that case the court of necessity would have been compelled to treat the real property which was a part of the *corpus* as property in which Harry Duffill had neither a legal nor an equitable estate and the income from that portion of the trust property could not have been held to be income from property coming to Harry Duffill from the estate of his mother. The Supreme Court made no such distinction, but held that, as to the entire *corpus* of the trust, real as well as personal, Harry Duffill had a present vested equitable estate.

While the Supreme Court did not say so in so many words, it is implicit in the decision that the proper construction of Civil Code, section 863, is that it has reference to legal interests and estates as distinguished from equitable interests and estates. As construed in the Duffill case this section means in effect: ''every express trust in real property . . . vests the whole (legal) estate in the trustees. . . . The beneficiaries take no (legal) estate or interest in the property . . . ''

This holding was foreshadowed in *Estate of Fair, supra, Estate of Aldersley, supra,* and *Gray* v. *Union Trust Co., supra,* all of which were cited and relied upon by the Supreme Court in the Duffill case. It is perfectly in keeping with the similar holdings of the Supreme Court of Wisconsin in *Patton* v. *Ludington, supra,* and *Williams* v. *Williams, supra,* in both of which an equitable estate in the beneficiary was recognized despite a code section identical in language with our Civil Code, section 863.

Respondents cite and rely upon *Ward* v. *Waterman,* 85 Cal. 488 [24 Pac. 930], *Craven* v. *Dominguez Estate Co.,* 72 Cal. App. 713 [237 Pac. 821], *Finnie* v. *Smith,* 83 Cal. App. 707 [257 Pac. 866], and *Houghton* v. *Pacific Southwest Trust & Sav. Bank,* 111 Cal. App. 509 [295 Pac. 1079],

claiming that they announce a contrary doctrine. Each of those cases was concerned with a trust created for the sole purpose of selling the real property and paying the money received from such sale to the beneficiary. In no one of them was it contemplated that in the execution of the trust any part of the real property should ever be returned or reconveyed to the beneficiary, the only right which the beneficiary had under the trust being to receive from the trustee money after the real property had been sold. In such a situation the courts very properly held that the beneficiary had no title, legal or equitable, in the real property, but only the right to receive from the trustee money, a bare chose in action. This situation is clearly distinguishable from that existing in the Duffill case and in the case before us. In the Duffill case upon Albert's reaching the age of twenty-one years Harry was to receive from the trustees not merely money but one-half the *corpus* of the trust itself.

In the pending case at the expiration of twenty years from the creation of the trust Rose Murray was to receive from the trustees not merely money, but a one-twelfth interest in the real property which constituted the *corpus* of the trust. In such a situation a court of equity can look through form to substance and recognize in the beneficiary a present equitable estate as was done in the Duffill case.

The same result may be obtained by applying the equitable doctrine of conversion (6 Cal. Jur., p. 528, sec. 3). Where real property is conveyed to a trustee with directions to sell in any event it will be treated in equity as personal property. But where the property in kind is, or may be, conveyed to the beneficiary no such equitable conversion results.

For the purpose of levy and sale under execution an equitable estate in real property has always been regarded in this state as real property (15 Cal. Jur., p. 1018, sec. 27). In *Fish* v. *Fowlie,* 58 Cal. 373, the levy was "upon all the right, title and interest which George Fowlie had in and to the land". It was held that sale under such levy transferred to the purchaser Fowlie's rights under an executory contract with the owner to sell the land to Fowlie, the court saying:

"The words 'real property' are co-extensive with lands, tenements, and hereditaments. (Subd. 5, sec. 14, Civ.

Code.) Land also embraces all titles, legal or equitable, perfect or imperfect (*Leese* v. *Clark,* 20 Cal. 387), including such rights as lie in contract—those which are executory as well as those which are executed. (*Soulard* v. *United States,* 4 Pet. 511 [7 L. Ed. 938].) Any interest, therefore, in land, legal or equitable, is subject to attachment or execution, levy, and sale. (Code Civ. Proc., sec. 688; *Kennedy* v. *Nunan,* 52 Cal. 330; *Le Roy* v. *Dunkerly,* 54 Cal. 452, 460.) As a purchaser at the sheriff's sale, the intervener, therefore, became substituted to, and acquired all the right, title, interest, and claim, which the judgment debtor, George Fowlie, had in the land on the 27th of January, 1876—the date of the levy (Code Civ. Proc., sec. 700), and he was the owner of that interest when the defendants mortgaged the land to the plaintiffs.

"But it is claimed that Fowlie had no interest at the time of the levy and sale, which passed by the sheriff's sale and deed to the intervener. Fowlie had not the legal title to the land. He had nothing more than an interest derivable under a contract of sale made on the 15th of June, 1875, between himself and one W. J. Gunn, who was the legal owner. By that contract Gunn contracted to convey the land to 'Fowlie, his heirs or assigns,' upon payment of a balance of unpaid purchase money 'on or before the 15th of September, 1876'. No personal obligation was given by Fowlie for the payment of the purchase money; and it does not appear that Fowlie obtained possession under the contract, or that he was in possession at the time of the levy or sale. Yet he had agreed to purchase the property, and had paid part of the purchase money, and covenanted to pay the balance at a stipulated time; and he thus became vested with such an equitable interest in the land as was the subject of sale or transfer by himself; or of appropriation by execution, or in any other mode prescribed by law, by his creditors. This interest being vendible by the judgment debtor, and leviable by his attachment or judgment creditors, was all that passed by the sale and deed under the judgment against him to the intervener." (See, also, *Le Roy* v. *Dunkerly,* 54 Cal. 452; *Kennedy* v. *Nunan,* 52 Cal. 326; *Logan* v. *Hale,* 42 Cal. 645; *Brown* v. *Campbell,* 100 Cal. 635 [35 Pac. 433, 38 Am. St. Rep. 314].)

It is difficult to discern any logical difference between the right to receive a conveyance from an executory vendor which was held to create an equitable estate in the real property in *Fish* v. *Fowlie, supra,* and *Logan* v. *Hale, supra,* and the right to receive a conveyance at the expiration of the life of the trust such as exists in the case under consideration. In either event, the only existing right is to receive a conveyance of the property in the future. If such a right creates a vested equitable estate in the one case it should logically have the same effect in the other.

If respondent Margaret Cunningham is correct in her contention that Rose Murray had a mere chose in action and nothing more, then by the purchase as personal property of the interest of Rose Murray on the execution sale respondent has acquired all of the rights of Rose Murray under the trust. It would result that if Rose Murray is still living at the expiration of the trust respondent would be entitled to have the trustees convey to her the one-twelfth interest in the real property held in trust by the trustees to reconvey to Rose Murray. She would then have the legal title to such real property in fee and she would have acquired such legal title by the purchase of Rose Murray's interest in the trust as personal property, and by her purchasing it as personal property Rose Murray would be deprived of the right of redemption given to an owner of an interest in real property by our code. We are satisfied that no such result should follow and under the authority of *Title Ins. & Trust Co.* v. *Duffill, supra,* and the cases therein cited, we are likewise satisfied that while the trustees held the legal estate of the trust property in fee, Rose Murray had an equitable estate in one-twelfth thereof, and since the trust property was realty that this equitable estate was an interest in real property belonging to the defendant and standing in the name of the trustees which should have been levied upon in the manner provided by section 542, subdivision 2, of the Code of Civil Procedure.

It results that the judgment appealed from should be and it is reversed with directions to the trial court to take an accounting to determine the net income received by respondent Margaret Cunningham since the sale on execution from the interest of Rose Murray in the property in question, and, if such net income with legal interest from the dates

of the various payments to such respondent exceeds the amount paid by such respondent upon the execution with legal interest thereon, to order such excess paid to plaintiff and to quiet the title of Rose Murray in and to her interest in the trust and trust estate against the claim of respondent Margaret Cunningham based upon her purchase at the execution sale; if, however, upon such accounting such net income with interest is found to be less than the amount paid by such respondent upon the execution sale with interest, to make such decree quieting title conditional upon the payment to such respondent of the difference between such amounts within a reasonable time to be fixed by the trial court.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 12, 1933, and the following opinion then rendered thereon:

THE COURT. — On petition for rehearing counsel for respondents assert that this court was in error in stating that the trustees under the Cunningham Estate Trust had the power "to invest and reinvest the proceeds" from sales of trust property. The portion of the opinion in which these words appear did not purport to quote the language of the deed of trust but to give its effect. ■ That the trustees had the powers stated is made clear by the following portions of the deed of trust, which we quote *verbatim*: "Said Trustees shall have, and are hereby granted, the right and power to sell and dispose of any portion or portions of said real property (paragraph 2). . . . Said Trustees may purchase, take or lease or otherwise acquire any lands or hereditaments useful in connection with these trusts (paragraph 3). . . . All of the trust property at any time vested in the Trustees for any of the purposes of these presents shall be held by them upon the like trusts for sale and conversion and the like powers and provisions in respect of management, control, disbursements and distribution thereof and the application of the rents, revenues and income of the same, as are herein contained concerning the property or rights therein or thereto hereby granted or assigned to

the Trustees by the grantors herein for or on account of these trusts. (Paragraph 6.)''

It is plain that the trustees were given the power to sell and buy property and to hold property subsequently acquired with trust funds subject to the trust created. The effect of this was to give them the power to invest and reinvest.

The petition for rehearing is denied.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 1, 1933.