[L. A. No. 8110. In Bank.—October 1, 1928.]

B. W. HULSMAN et al., Appellants, v. LOUIS E. IRELAND et al., Respondents.

William Ellis Lady for Appellants.

J. M. Morin and O'Melveny, Tuller & Myers for Respondents.

PRESTON, J.—This appeal presents a question respecting community property rights between a husband and wife and third persons. Appellants argue strenuously for their position, but admit their inability to find authority to support it. Respondent, of course, does not aid them in this difficulty, but contends that the appeal must be dismissed "without hesitation." However, notwithstanding this situation, we are of the opinion that appellants are correct in the contention put forth, for which we have found a measure of authority.

Plaintiffs, as a copartnership, sue defendants individually and as copartners doing business under the firm name of "Tubells Co." Defendants Rufus W. Russell and Elizabeth B. Russell are husband and wife. The business conducted under the fictitious name was that of a restaurant and confectionery in Los Angeles. The claim of plaintiffs is for a balance of approximately $8,000 for meats furnished to and consumed in said business between July 1, 1921, and March, 1922. The justice of the claim is not disputed. Plaintiffs had judgment against defendants Ireland and Elizabeth B. Russell. Defendant Rufus W. Russell had judgment in his favor and for his costs. The appeal is by plaintiffs from so much of the judgment as exonerates said Rufus W. Russell from personal liability for said debt. The facts necessary

to present the appeal may be taken from findings No. 7 and 7½ of the second cause of action, which read as follows:

"7. The court further finds that sometime prior to the first day of July, 1921, defendant Louis E. Ireland and defendant Elizabeth B. Russell entered into an arrangement between themselves whereby they would form a co-partnership under the style and firm name of Tubells Co. for the purpose of operating, opening and conducting a restaurant or confectionery business at 821 West Seventh Street in the City of Los Angeles; that defendant Louis E. Ireland was to receive one-half of all profits and defendant Elizabeth B. Russell was to receive the other one-half of all profits that might accrue from said business; that defendant Louis E. Ireland contributed a large amount of the partnership capital that was to and which did go into said business, and a large amount of the remaining portion of the partnership capital that was to and which did go into said business, and being at least the sum of $12,000.00 cash, and not contributed on behalf of defendant Louis E. Ireland, was obtained by Elizabeth B. Russell borrowing $7,500.00 thereof from the National Bank & Trust Company of Pasadena sometime during the spring of 1921 and before the formation of said partnership arrangement and giving her promissory note to evidence the same, which said promissory note was not secured in any manner, and by her borrowing the sum of $4,500.00 from said National Bank & Trust Company of Pasadena during the month of September, 1921, and giving her promissory note to evidence the same and securing it by pledging bonds belonging to the said Elizabeth B. Russell and Rufus W. Russell, and being community property of said parties; that said bonds were in a safety deposit box to which both defendants Russell had access; that prior to the opening of said business defendant Rufus W. Russell objected to defendant Elizabeth B. Russell entering into said partnership; that he knew that she did not have separate property of her own with which to make the contribution to said partnership capital which he knew she had made thereto; that he knew that she had contributed partnership capital for and prior to the opening of said business in the month of July, 1921, and that after the formation of said partnership and the opening up of said business, defendant Rufus W. Russell accepted employment with said partner-

ship and continued to be so engaged until sometime during the month of March, 1922, as set out in finding 7½; that defendants Rufus W. Russell and Elizabeth B. Russell at all times herein mentioned were and now are husband and wife and residing together as such husband and wife, and until sometime during the spring or summer of the year 1922 said defendants Rufus W. Russell and Elizabeth B. Russell gave all their time and attention to the said restaurant and confectionery business after the formation thereof, the said Rufus W. Russell under conditions set out in finding 7½ except such thereof as was necessary for them to give to the conduct of their hotel business then conducted in the City of Pasadena known as the Crown Hotel, located on East Colorado Street in said city; that defendants Rufus W. Russell and Elizabeth B. Russell at no time had any agreement between them respecting the disposition of their community property and their earnings, or concerning any other matter or thing relating to their property interests.

"7½. The Court finds that Rufus W. Russell did not become a partner nor a party to the copartnership known as Tubells but that the said firm of Tubells was a co-partnership consisting of defendants, Louis E. Ireland and Elizabeth B. Russell, and no other persons. The Court finds that at no time did Rufus W. Russell represent himself as a co-partner in the said firm of Tubells, nor did he permit himself to be represented as a co-partner in said firm, and the court further finds that at no time did the plaintiffs sell goods to Tubells, the co-partnership upon any assumption that Rufus W. Russell was a co-partner in said firm, and that at no time was credit extended by plaintiffs upon the assumption that Rufus W. Russell was a member of the firm."

It is true that the complaint states a cause of action against the defendant Rufus W. Russell as a copartner with the other defendants under said fictitious name, but if the facts show him to have been associated in business with the other defendants under said fictitious name, then a personal judgment against him for the debt would be proper (sec. 388, Code Civ. Proc.); therefore, we are not required to actually find that the relationship of a copartner existed. The real problem is: Was the wife, in her actions in the premises, the agent of the husband, the head of the com-

munity, and, if so, is not the husband liable not only as head of the community but personally for her acts so done and performed? She could only bind the community as agent of the husband; otherwise he would not be liable for her contract (Civ. Code, sec. 167), except for necessaries (Civ. Code, sec. 174). ▮ The power of either spouse to act as agent for the other is undeniable. (*Arnold* v. *Loomis,* 170 Cal. 95, 97 [148 Pac. 518]; *Corbit* v. *Kimball,* 107 Cal. 665, 667 [40 Pac. 1029]; *Althof* v. *Conheim,* 38 Cal. 230 [99 Am. Dec. 363].) It requires even less proof to establish this agency than in other cases. (*Rauer's Law etc. Co.* v. *Berthiaume,* 21 Cal. App. 670 [132 Pac. 596, 833]; *Wagoner* v. *Silva,* 139 Cal. 559 [73 Pac. 433].) The agency may be proved by circumstances as well as by direct evidence. (*Puget Sound Lumber Co.* v. *Krug,* 89 Cal. 237 [26 Pac. 902]; *Rauer's Law etc. Co.* v. *Berthiaume, supra; Clendenin* v. *White,* 62 Cal. App. 664 [217 Pac. 761].) The agency may also be shown by proof of ratification of acts done without previous authority. (*Schader* v. *White,* 173 Cal. 441 [160 Pac. 557].)

Texas, a community property state, has had cases similar in principle to the one before us and a reference to some of them may be proper here. In the case of *Wetzel* v. *Simon,* 87 Tex. 403 [28 S. W. 942], a husband was trading under his wife's name in the mercantile business. Being unable to meet his debts and believing the goods to be the property of his wife, he caused her to execute a conveyance to creditors as an insolvent debtor. The court held that this assignment so executed was binding as against his attaching creditors and discussing the question said: "The trial court found that the effects which purported to be transferred belonged to the community estate of N. Wise and his wife. The debts were created in carrying on the business, and were the debts of the husband, as representing the community, and not the debts of the wife. We apprehend that if the original stock of goods had been the property of the wife, since the profits of the business belonged to the community estate, debts contracted in the purchase of new goods would be community debts. Such being the case, we are of the opinion that when the husband directed the wife to sign the conveyance in her own name, and when, in pursuance of such direction she did so exe-

cute it, it passed the title of the property with the same effect as if he had signed it himself in his own name and had delivered it with his own hand.''

*Neighbors* v. *Anderson*, 94 Tex. 487 [61 S. W. 145, 62 S. W. 417], was a case where a husband and wife were living together on school land bought from the state and the purchase was made by the wife. They both continued to live upon said land until litigation arose. The court held that the presumption was that the purchase was made with the consent of the husband and hence that the obligation for the purchase money was a valid community property debt.

The question was next before the court in *Richburg* v. *Sherwood*, 101 Tex. 10 [102 S. W. 905], a case where the wife borrowed money upon her own notes without her husband's knowledge and used same in purchasing a stock of merchandise for her sons in order that they might carry on the business for themselves. The court recognized the rule here contended for by the use of the following language: ''By authority of the husband expressly given or implied from his acts, the wife may act as his agent, and may make contracts which would bind him and their community estate.'' The court, however, held that the facts of that case rendered said rule inapplicable, saying in that respect: ''This case does not come within either of the exceptions to the general rule that a married woman cannot make a binding contract. Mrs. Richburg did not purport to act for herself and her husband in making the note sued upon. She did not purchase the goods for the purpose of carrying on a business which would make the profits community property. She purchased the goods in order that her sons might enter into business and carry it on for themselves. The husband did not know of the purchase of the goods and the giving of the note when it occurred, and in no way signified his consent to or approved of the venture. The fact that he subsequently became aware of the transaction, and did not enter a protest, cannot affect this case, for Sherwood's rights had already accrued, if he had any, before the matter came to Richburg's knowledge. Sherwood knew that the wife was buying the goods for her sons, and he did not look to the husband, B. R. Richburg, for payment of the notes, but expected that they would be

paid out of the business by the sons. In such a transaction there is no foundation for the proposition that the husband is bound because the wife, with his consent, acted as his agent in making the transaction, and that the community estate had been benefited by receiving the proceeds of the business. The cases cited by counsel for appellee do not apply to the facts of this case. They announce proper rules for the cases in which the decisions were made, because facts existed by which the wife was shown to have acted with the consent of her husband, and with the purpose that she should transact the business for their common benefit.''

*Hall* v. *Decherd*, 62 Tex. Civ. App. 426 [131 S. W. 1133], is in the same category as the case last above cited, being a case where the wife purchased a piano for her two step-children and it was held that the purchase was not for the benefit of the community estate and therefore the husband was not liable.

However, we think the case of *Althof* v. *Conheim, supra*, a case by our own court, recognizes the principle that is applicable here. In that case defendants were husband and wife. The wife resided in San Francisco and carried on a business in her own name while the husband resided in another state. The wife, desiring to purchase a lot in Oakland, borrowed of plaintiff $520 to make the purchase. She took the deed in her own name. The husband afterward arrived in the state and he and his wife took possession of the lot and resided on it during all of the time involved. They sold a portion of it and retained the balance, both uniting in such sale and in the receipt of the purchase money. The prayer of the complaint was for judgment against both of them for the amount loaned by plaintiff and that it be declared a lien upon the lot. The court said: ''If the wife had no previous authority from the husband to contract the debt to the plaintiff, he adopted and ratified the transaction by using and occupying the lot, selling a portion of it, and appropriating the proceeds to his own use. Whilst dealing with the property as his own, which was in part paid for with the plaintiff's money, borrowed by the wife for that purpose, the law will presume either that the wife had authority to contract the loan, or that the husband has since ratified the transaction and agreed

to be bound by it. He will not be allowed to say that he ratified so much of it as inures to his advantage, by accepting the benefit of a purchase made by his wife partly with the plaintiff's money, but repudiates so much of it as requires the sum advanced by the plaintiff to be refunded. He must take the transaction *cum onere*, if he adopts it at all. In ratifying the purchase by his wife, he ratifies her engagement to the plaintiff as well, and in adopting one he adopts the other." The case of *Roullard* v. *Gray*, 30 Cal. App. 757 [159 Pac. 457], while in some respects similar, does not contain the elements of ratification here present.

So, in the case before us, the test of the question involved is: Would the community estate presided over by the husband have been benefited had profits resulted from the venture herein described? We think it is too clear for controversy that such profits would have redounded to its benefit. It is no answer to this contention to say that defendant Ireland and the wife, being partners, profits could not result direct to the husband. If dividends had been declared or profits accumulated and later distributed, the result would be the same as if the profits were directly paid to him. The evidence shows that before the venture got under way and before the restaurant was operated, the husband returned home and found his wife engaged in this enterprise; he assisted her, had knowledge of her use of the community estate therein, and identified himself with the business and remained with it as long as it lasted. He did what was known to the business as "flooring," which could of itself have done nothing except to create the impression that he was a part of the same and the wife an agent. This presents such a clear case of ratification of the acts of the wife as to leave us in no doubt that her action had his express consent. To allow him to stand by and take the profits, had there been any, without assuming the burdens, would be to support a principle which would work an injustice to creditors dealing in good faith with one spouse as the representative of the other.

There is likewise no merit in the point that plaintiffs may not have known whether the wife was or was not the agent of the community estate. A creditor may sue an undisclosed principal when found although he may not have known of the existence of such principal at the time the

debt was incurred (21 R. C. L., p. 890, sec. 63; *Schader* v. *White, supra; Karns* v. *Olney,* 80 Cal. 90 [13 Am. St. Rep. 101, 22 Pac. 57]).

We are also satisfied that the findings themselves require a judgment for the plaintiffs in this case as against all the defendants individually. That portion of the judgment appealed from is, therefore, reversed, with directions to the court below to enter judgment in favor of plaintiffs and against the defendant Rufus W. Russell for the sum of seven thousand nine hundred twelve and 76/100 ($7,912.76) dollars, together with interest thereon from October 1, 1923, and for their costs.

Richards, J., Curtis, J., and Seawell, J., concurred.

LANGDON, J., Dissenting.—I dissent. The amended complaint named Ireland and Mr. and Mrs. Russell, individually and as copartners doing business under the firm name of Tubells Co., alleging that they had entered into an agreement to form, and did form, a partnership and that defendant Ireland had contributed one-half of the capital used in the partnership business and the defendants Russell had contributed the other half out of community funds, and that the profits were to be divided, one-half to defendant Ireland and the other one-half to defendants Russell, as community property. The answer denied that Rufus Russell had entered into said partnership at any time or in any manner, denied that he had any interest therein or was to receive any of the profits thereof, except that he was employed in said business as a servant under the direction of defendant Ireland for some time. This presented a clear cut issue of fact, which was resolved by the trial court in favor of the defendant Rufus Russell. Whether Russell entered into the partnership directly or through an agent is immaterial, the ultimate fact found is that he did not enter into a partnership. The finding of the trial court on this subject is set forth in the majority opinion and is to the effect that he did not do so. This is also a finding to the effect that he did not become a partner by ratification.

As all these matters are questions of fact and as the most that can be said for the appellant is that conflicting infer-

ences might be drawn from the evidence appearing in the record, the findings should be binding upon appeal. The majority opinion, in the face of a finding upon undisputed evidence and possible conflicting inferences, holds, practically as a matter of law, that the mere fact that Rufus Russell was the husband of Elizabeth Russell and by law entitled to the control of community property which might be acquired by her business ventures, makes him a partner with any third person with whom she cares to associate herself in any partnership business. Since by virtue of his status as her husband he has no power to control her entrance into partnership ventures, it would indeed be far-reaching in its consequences and inequitable in its operation to lay down as a rule that as a matter of law he is bound thereby. As admitted in appellants' briefs and in the majority opinion, there is no direct authority for such a holding in this state and I do not wish to subscribe to it as an initial pronouncement.

Shenk, J., and Waste, C. J., concurred.

Hearing in Bank denied.

Waste, C. J., Shenk, J., and Langdon, J., dissented.