[Civ. No. 11070. First Appellate District, Division One.—March 13, 1940.]

STANLEY H. MEYER, Respondent, v. ELIZABETH THOMAS et al., Appellants.

John F. O'Sullivan for Appellants.

Arthur J. Healy, William E. Barden and Frank J. Needles for Respondent.

WARD, J.—This is an appeal from a judgment setting aside conveyances and a mortgage as fraudulent in respect to the creditors of Elizabeth Thomas, Charles H. Thomas and Charles DeBold.

The action arises out of a former suit, wherein the court, sitting with a jury in an advisory capacity, rendered judgment against Elizabeth Thomas and Charles DeBold. (*Meyer v. Thomas*, 18 Cal. App. (2d) 299 [63 Pac. (2d) 1176].) The facts as there found by the court, pages 301, 302, are as follows: "Anna Marie Meyer died intestate, leaving as heirs two sons, the defendant Herbert F. Meyer and the plaintiff Stanley H. Meyer. Prior to the commencement of the administration of the estate and for the purpose of facilitating the distribution of said estate plaintiff assigned to defendant Meyer his interest in and to said estate. Comprising part

of said estate was a promissory note for $6,500 secured by a deed of trust on certain property on Dolores street, San Francisco, executed by defendant DeBold, and which property the court found to be worth $2,500. Defendant Meyer borrowed $250 from defendant Elizabeth Thomas, and to secure repayment of said loan he assigned and transferred to her the DeBold note and deed of trust. Defendant Thomas knew at all times that plaintiff had an interest in and to part of the estate and thereby to the DeBold note, which interest had never been renounced, repudiated or disclaimed by plaintiff. Before this action was commenced defendant Meyer assigned the said note to plaintiff, and plaintiff twice tendered to defendant Thomas $250 and demanded return of the note, but the tenders and demands were by her refused. Soon after the second tender DeBold, without the consent of plaintiff, conveyed by deed his interest in said property to defendant Thomas, who thereupon surrendered to him the promissory note and deed of trust in question. No sale was had under the deed of trust, and the sole consideration for the conveyance was the surrender of the note by defendant Thomas to DeBold. The court further found that the defendants Thomas and DeBold converted said promissory note and deed of trust to the use and benefit of the defendant Thomas, and deprived plaintiff of his right, title and interest in said note and deed of trust, and gave judgment in plaintiff's favor for $4,444.12, which was the value of the note less the amount of the $250 loan and interest.''

Subsequent to the return of the verdict in that case, but prior to the entry of judgment, Elizabeth Thomas deeded to her husband Charles H. Thomas, who had not been a party to the action, premises at 1265 Dolores Street, as well as certain parcels of land in Calaveras County, and Charles DeBold mortgaged to Charles H. Thomas premises at 1267 Dolores Street. The present action was instituted to set aside these three instruments.

The trial court in the present action found that defendant Charles Thomas engaged in a course of conduct with his wife Elizabeth and Charles DeBold, which left the two defendants last named, and each of them, without sufficient, or any, property to satisfy the judgment against them, and that

Charles Thomas had knowledge of the fraudulent intention in connection with the execution of the instruments.

On the trial of this case, defendants contended that the mortgage on premises at 1267 Dolores Street was given for a consideration. During oral argument on appeal they agreed that judgment as to the cancellation of the mortgage be affirmed, and they subsequently entered into a stipulation that the judgment ''decreeing to be void that certain mortgage on the real property described as 1267 Dolores Street, San Francisco, California, be, and the same may be affirmed.''

■ With reference to the Calaveras County property, it is appellants' contention that such property had been held by Mr. and Mrs. Thomas as joint tenants; that prior to the institution of the suit of January, 1935, which led to the judgment for conversion, Mrs. Thomas had transferred such property to her husband by deed dated September 14, 1934, acknowledged September 18, 1934, but not recorded; that such deed omitted a certain parcel of land and that on November 5, 1935, she executed a second deed, including this omitted property, which was recorded November 6, 1935.

Appellants do not challenge the sufficiency of the evidence to support the finding that these transfers were made with fraudulent intent. There is support in the evidence presented and the reasonable inferences that may be drawn therefrom to justify the conclusion that the 1934 deed to the Calaveras property was never effectually delivered. Mrs. Thomas testified that this deed was prepared because she had been sued for $50,000 by a party who ''had tried to blacken my name all she could, but she could not succeed''. Mr. Thomas was, at least, confused in his testimony relative to the time and circumstances of delivery. In view of the fact that the property was not community property, but was held in joint tenancy, and that the transfer was made with fraudulent intent, we must agree with the trial court that the wife never intended to divest herself of title. (*Williams* v. *Kidd,* 170 Cal. 631 [151 Pac. 1, Ann. Cas. 1916E, 703]; *Siberell* v. *Siberell,* 214 Cal. 767 [7 Pac. (2d) 1003].)

The holding of property in joint tenancy indicates that the property is not community property, but that the spouses have separate interests therein. As said in *Estate of Harris,* 9 Cal. (2d) 649, 659 [72 Pac. (2d) 873]: ''Upon the creation

of the joint tenancy ownership, each owned their interest therein as separate property.'' The evidence in this case does not show a contrary intention. (*Delanoy* v. *Delanoy,* 216 Cal. 23 [13 Pac. (2d) 513].) ▮ Execution may be levied upon the interest of a tenant in common. (*Lynch* v. *Cunningham,* 131 Cal. App. 164 [21 Pac. (2d) 154, 973].) A creditor whose claim arises out of a tort is entitled, upon recovering judgment, to have a fraudulent conveyance set aside. (*Adams* v. *Bell,* 5 Cal. (2d) 697 [56 Pac. (2d) 208]; *Chalmers* v. *Sheehy,* 132 Cal. 459 [64 Pac. 709, 84 Am. St. Rep. 62].)

▮ With reference to the deed from Elizabeth Thomas to her husband covering premises at 1265 Dolores Street, appellants in their reply brief state: ''Conceding that Elizabeth Thomas had obtained the property by fraud in the first instance, respondent here had the right to have a court of equity restore the property to him. (*Gorham* v. *Gilson,* 28 Cal. 479, 483.)'' It is appellants' contention that where respondent did not take the property, but received a money judgment in its place, he is now estopped from asserting any fraud on the part of Elizabeth or Charles Thomas as to the manner in which they acquired the 1265 Dolores Street property. In other words, to quote from appellants' reply brief, if respondent was seeking for the first time to recover the property ''appellants could not hide behind the cloak of community property''. When the wife converted the pledged note and deed of trust, and accepted transfer of the real property from DeBold, the deed was made to her and title of record continued in her name until the transfer to her husband, subsequent to which date, however, she attempted to sell the property to a third party. Thomas told his wife ''to get a deed made out in his name, and put it on record'', which was a ratification of the wife's actions in the whole transaction. (*Hulsman* v. *Ireland,* 205 Cal. 345 [270 Pac. 948]; *Althof* v. *Conheim,* 38 Cal. 230 [99 Am. Dec. 363]; *Wetzel* v. *Simon & Co.,* 87 Tex. 403 [28 S. W. 274]; *Richburg* v. *Sherwood,* 101 Tex. 10 [102 S. W. 905].)

▮ This brings us to the major contention of appellants, namely, that the judgment in favor of plaintiff in the former action was founded upon a tort of Elizabeth Thomas, and that the property referred to as 1265 Dolores Street, conveyed to Charles Thomas by his wife, being community prop-

erty, is not subject to execution to satisfy a judgment for such tort. In this connection, appellants rely upon *Smedberg* v. *Bevilockway*, 7 Cal. App. (2d) 578 [46 Pac. (2d) 820]. That decision is not based upon a state of facts similar to those with which we are here confronted. In the Smedberg case, the court, at page 581, says: "At the instance of the wife her interest could be segregated by a mutual contract between her and her husband (Civ. Code, sec. 159); or in a divorce action (Civ. Code, sec. 146); or a separate action based on a divorce action (*DeGodey* v. *Godey*, 39 Cal. 157); or, on her death, by reason of the provisions of her will. (Prob. Code, sec. 201.) Our statutes provide no other methods." Further, the court said, page 581: "But it is not claimed that either before or after the enactment of section 161a of the Civil Code the community property or the separate property of the husband was liable for the contracts of the wife made after marriage unless secured by a pledge or mortgage thereof executed by the husband. The statute provides it was not. (Civ. Code, sec. 167.)" Since the rendition of the decision in that case, and subsequent to transactions involved in the present one, section 167 has been amended to read as follows: "The property of the community is not liable for the contracts of the wife, made after marriage, unless secured by pledge or mortgage thereof executed by the husband. Except as otherwise provided by law, the earnings of the wife are liable for her contracts heretofore or hereafter made before or after marriage." (Stats. 1937, chap. 508, p. 1497.) This change is indicative that recent legislative action tends to a modification of the rule followed in *Smedberg* v. *Bevilockway, supra;* at least to the extent that the earnings of the wife, which become community property, are liable for her contracts, without execution by the husband of any pledge or mortgage. In the Smedberg case, there was no question of fraud. In the instant case it is apparent that fraud taints the entire transaction. In the Smedberg case, the question of the agency of the wife, representing her husband in the disposition of community property, was not raised. Here, the evidence proves knowledge on the part of the husband of the actions and intent of the wife, and his ratification thereof by acceptance of the benefits of the fraudulent transaction. ■ That the wife may

be the agent of the husband, who controls the community property, and that the husband may be liable as head of the community, and personally, for the actions of the wife, see *Hulsman* v. *Ireland, supra,* wherein it was held that the wife could bind the community as agent of the husband, and that ratification of acts performed may tend to establish agency. (*Schader* v. *White,* 173 Cal. 441 [160 Pac. 557].)

Section 171a of the Civil Code provides: "For civil injuries committed by a married woman, damages may be recovered from her alone, and her husband shall not be liable therefor, except in cases where he would be jointly liable with her if the marriage did not exist." In the Smedberg case there was no claim that the husband would have been jointly liable with the wife had the marriage not existed. In this case it appears that the husband was a joint tort-feasor with the wife in the conversion of the property; he, at least by acquiescence, permitting his wife to use community funds in making the original loan of $250, for which she received an assigned note for $6,500 secured by a deed of trust. It is only fair to note in this connection, however, that the property secured by the deed of trust was eventually found to be worth only $2,500. (*Meyer* v. *Thomas, supra.*) The husband, Charles Thomas, though not a defendant in the original action, would have been jointly liable with the wife "if the marriage did not exist". (Civ. Code, sec. 171a, *supra.*) Plaintiff and respondent, in the presence of Charles Thomas, who took part in the conversation, tendered payment of the sum for which the note was pledged. The tender was refused. Subsequently the husband accepted a deed from Elizabeth Thomas covering the property, in which deed a consideration of $2,000 was recited; Thomas testified the property was worth $1500. On the day following the recordation of the 1265 Dolores Street deed, the wife withdrew from two San Francisco banks all sums on deposit, totaling $2,894, which she testified was the purchase price paid to her by her husband for this property. The funds so withdrawn were on deposit to the credit of Charles H. Thomas or Elizabeth Thomas, payable to either of them.

As stated, the question of fraud did not arise in *Smedberg* v. *Bevilockway, supra.* Under these circumstances, even if the rule of the Smedberg case were applicable to a situation

where the wife, through the use of community funds has secured property by her fraud, and where the husband has no knowledge of and has not participated therein, a point we do not decide, the rule could have no application to the facts of this case. Here the evidence demonstrates that the husband knew of and participated in the fraudulent transaction. In a final attempt to prevent the respondent from securing redress for that fraud, the husband accepted a deed to the premises. Under such circumstances the ordinary rules appertaining to fraudulent conveyances apply. The collusion between the husband and wife in this case, from its inception, to defraud Herbert F. Meyer, deceased, and his assignee Stanley H. Meyer, and to prevent them from obtaining a just settlement for the DeBold note and deed of trust, was established. If a conveyance is intended to defeat creditors, it is voidable. (*Cioli* v. *Kenourgios,* 59 Cal. App. 690 [211 Pac. 838].) If the transaction is permitted to stand, the wife and the husband would "reap the fruit of fraud". (*Kemp* v. *Enemark,* 194 Cal. 748, 753 [230 Pac. 441].) In that situation not only is there legal justification for subjecting the community property to execution to satisfy the money judgment for the tort of the wife, but manifestly justice and fairness demand that this be done. (*Lynch* v. *Cunningham, supra.*)

The findings and conclusions of law, that the conveyances and each of them are fraudulent, and should be decreed to be void and of no effect and set aside, in accordance with the prayer of the complaint, are hereby upheld.

The judgment is affirmed.

Peters, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 12, 1940, and the following opinion then rendered thereon:

THE COURT.—On this petition it is urged that in its opinion this court has disregarded the rule of *Hilborn* v. *Bonney,* 28 Cal. App. 789 [154 Pac. 26], and *Gray* v. *Gray,* 25 Cal. App. (2d) 484 [77 Pac. (2d) 908], to the effect that when one has been deprived of his property by the fraud of

another he may recover the property or sue for damages, and if he pursues the latter remedy he validates the acquisition of the property and becomes only a general creditor of 'the fraudulent defendant. ▮ We may assume, for the purposes of this opinion, that that rule is applicable, and that by electing to take a money judgment in the first action the plaintiff cut off the right to have the specific property returned to him, and became a general creditor of Elizabeth Thomas. Then the legal situation is one where the plaintiff has a judgment against Elizabeth Thomas based on her tort. The property, we may assume, has become the community property of Elizabeth Thomas and her husband. The question then presented is whether *any* of the community property, including the property fraudulently acquired, is liable for that judgment, and whether fraudulent conveyances in reference thereto should be set aside.

The question presented on this appeal, therefore, was whether or not the husband, who is a party to this action had participated in the tort of his wife. If so, of course, the community property is liable for their tort. On the evidence produced the opinion holds the wife was acting as the agent of the husband, and, therefore, under the decision in *Hulsman* v. *Ireland*, 205 Cal. 345 [270 Pac. 948], and the other cases cited in the opinion, the community property is liable.

There is nothing in the two cases relied upon by petitioner which conflicts with the views herein expressed.

The petition for rehearing is denied.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 6, 1940.