[Civ. No. 3028. Fourth Dist. Mar. 23, 1943.]

A. E. STEGEMAN, Appellant, v. V. W. VANDEVENTER et al., Respondents.

Alfred Siemon and Bennett Siemon for Appellant.

H. E. Schmidt, Marshall E. Leahy and Belli & Leahy for Respondents.

MARKS, J.—This is an appeal from a judgment in favor of plaintiff in the sum of $1,475, and refusing judgment against Cora M. Vandeventer and rescission of a contract.

Defendant V. W. Vandeventer was a duly licensed real

estate broker. Cora M. Vandeventer was his wife. They owned their home in Bakersfield. There was an unpaid principal balance of $1,650 of a debt due plaintiff by both defendants secured by a deed of trust on this property.

Early in 1939, plaintiff and Vandeventer entered into an agreement whereby plaintiff paid Vandeventer $750 which the latter was to use in securing oil leases in New Mexico. The two were to share the profits of the venture.

Vandeventer did not secure the leases and did not return the money. In 1940 it was agreed that he purchase prospective oil property in Fresno County for plaintiff at a cost of about $3,000. On April 12, 1940, plaintiff gave Vandeventer an additional $150 to be used in this purchase. Vandeventer gave plaintiff the following instrument:

## "AGREEMENT

I, V. W. Vandeventer, received from A. E. Stegeman $1000.00 in the following manner,

    $750.00 from cancelled oil lease sales agreement.
    100.00 voluntary interest.
    150.00 check.
    _____
    1000.00

to used to obtain potential oil land for A. E. Stegeman.
subject to his approval
Bakersfield California.
June , 7 , 1940.

(Signed)  V. W. VANDEVENTER"

Vandeventer represented to plaintiff that he had found ten acres of land in the general neighborhood of the Kettleman Hills oil fields in Fresno County which could be purchased for $3,000. The two went to see the property and plaintiff consented to its purchase. Later Vandeventer reported that developments tended to indicate that this ten acres was not a good prospect for oil development and suggested the acquisition of another ten acres in the same general locality for the same price. Plaintiff consented to this transaction without seeing the land. Vandeventer did not acquire it. He again reported against its purchase because of subsequent unfavorable indications from other drilling operations.

Vandeventer had purchased for himself twenty acres of land northwest of Wasco in Kern County for $1,000 and

had sold ten acres of this land as prospective oil property for $2,000. He found a resident of Fresno who owned ten acres of land near Tranquility in Fresno County. The two exchanged their properties without either paying the other any added consideration. The land near Tranquility had cost the owner five dollars an acre and there is evidence in the record that its market value was $35 per acre in June, 1940.

The deed from V. W. Vandeventer and Cora M. Vandeventer conveying the ten acres near Wasco was dated and acknowledged on June 11, 1940. It bore the statement, "Consideration less than $100.00." The deed conveying the ten acres near Tranquility to Vandeventer was dated and acknowledged on June 12, 1940. It also bore the statement, "Consideration less than $100.00." Neither deed had United States Internal Revenue stamps attached at the time of the exchange. On January 20, 1941, Vandeventer attached, and cancelled, revenue stamps of the value of fifty-five cents to the deed which he received.

Vandeventer reported to plaintiff that he could acquire ten acres of land in the Tranquility District in Fresno County for about $3,000. Without inspecting the property, and relying on the statements of Vandeventer that it was prospective oil land that could be acquired for about $3,000, plaintiff agreed to purchase it.

The deed from V. W. Vandeventer and Cora M. Vandeventer conveying this property to plaintiff was dated June 14, 1940, and was recorded June 15, 1940. It had attached to it three dollars in United States Internal Revenue stamps which were cancelled.

Plaintiff gave defendants $2,825 as consideration for the Fresno County property. This was paid in the following manner: Cancellation of the $1,000 debt evidenced by the writing dated June 7, 1940; satisfaction of the debt of $1,650 and the encumbrance on the Bakersfield property and the conveyance of this property to defendants as joint tenants with the right of survivorship; $175 in cash paid by plaintiff to Vandeventer. The joint tenancy deed conveying the Bakersfield home to defendants was dated June 28, 1940, and recorded July 5, 1940. The reconveyance of that property by the trustee under the deed of trust was dated and recorded on the same days.

Under date of July 1, 1940, defendants signed and acknowledged a deed of trust on the Bakersfield property to

secure a note for $600 payable to Nellie L. Jones whom it was admitted was an innocent party in the transaction and actually loaned defendants that sum. This deed of trust was recorded on July 5, 1940.

On August 28, 1940, Vandeventer executed and recorded a declaration of homestead on the Bakersfield property in which he estimated its cash value at $4,000.

■ The complaint alleges fraud on the part of both defendants. The trial court found all of the foregoing facts to be true, except that it was found that the value of the Fresno County land conveyed to plaintiff was $1,250. We can find no evidence in the record sustaining such an estimate of value. It was particularly found that ''defendant did not then or at any time state or declare or otherwise disclose to the plaintiff the manner in which he had acquired said land or the consideration which he had actually paid therefor, but represented, stated and declared to the plaintiff that he had paid the sum of $3,000.00 for said land; that said representation was false and untrue and was made for the purpose of cheating and defrauding the plaintiff, and that said defendant did not disclose to the plaintiff the manner in which he acquired said land or the consideration which he had paid therefor, in order that plaintiff might believe that he had purchased the same for the sum of $3,000.00; and that the plaintiff did believe such representations and did believe that said defendant had purchased said 10 acres of land in said Section 14 for the sum of $3,000.00.'' The actual price paid by plaintiff was $2,825 and not $2,725, as found.

■ The amount of the judgment of $1,475 against Vandeventer was arrived at by the trial court as follows: Paid by Plaintiff: release of the secured debt of $1,650; cash paid in June, 1940, $175; cash paid in April, 1939, $750, and in April, 1940, $150; total, $2,725; less $1,250, which the trial court found was the value of the Tranquility ten acres conveyed to plaintiff. This left a balance of $1,475 which the trial court found was the secret profit made by the agent in the transaction.

That this computation is not correct is clear from what we have already said. It fails to take into consideration the $100 interest which Vandeventer recognized as payable by him in the agreement which he signed on June 7, 1940. It was suggested at the trial that this interest charge was

usurious. We find no evidence of usury there. Vandeventer had the use of the $750 for about fourteen months, and of the $150 for about two months. Interest on those sums for those periods at twelve per cent per annum exceeds $100. We see no good reason why the agent who had deliberately defrauded his principal should be allowed to escape payment of this interest which Vandeventer had acknowledged in writing to be payable to plaintiff.

As we have already observed, there is no evidence to sustain the finding that the value of the Fresno County property conveyed by defendants to plaintiff was $1,250. The highest estimate of the reasonable market value of this property in June, 1940, which we can find in the record is $35 per acre, or $350.

In determining the amount of secret profit made by the agent out of the transaction, plaintiff should have been credited with having paid $2,825, instead of $2,725, for the property, and defendants should not have been credited with giving plaintiff a value of $1,250, but a much smaller sum.

The only evidence to the contrary we can find bearing on this question is that of Vandeventer. He testified that he paid Samuel R. Cokely, the former owner, $1,000 for the twenty acres near Wasco, ten acres of which was traded for the property near Tranquility; that he had to borrow the $1,000 and that he paid $1,500 bonus for the loan. Accepting his description of this most unusual transaction as true it does not change the fact that the selling price of the twenty acres was $1,000, or $50 an acre. If all parts of the twenty acres were of equal value, the cost to Vandeventer of the ten acres involved in the trade was $500 and not $1,250. The cost of the land in 1939, when Vandeventer acquired it, does not necessarily determine its reasonable market value in 1940.

Judgment was refused against Cora M. Vandeventer because she was not a party to any of the fraudulent representations which her husband made to plaintiff. While this may be true, she did take an active part in the fraud and now retains the profits, or some of them.

In the absence of all evidence to the contrary we must assume that all of the property of defendants involved in this transaction prior to the execution of the joint tenancy deed to them dated June 28, 1940, was community in which Mrs. Vandeventer had a vested interest. She signed the deed to the ten acres near Wasco which was exchanged for

the Fresno County property. She signed the deed conveying that property to plaintiff. That deed bore $3.00 in revenue stamps which, under the federal law, was a representation of a selling price of $3,000. She accepted the deed conveying the Bakersfield property to her as one of the joint tenants and still retains that interest in the property. She has the benefit of the declaration of homestead which her husband placed on it. Thus she not only performed acts which were necessary to a consummation of the fraud but still retains much of the benefits growing out of it.

It is well established in California that a husband or a wife may act as agent for the other; that the agency may be proved by circumstantial as well as by direct evidence (*Puget Sound Lumber Co.* v. *Krug,* 89 Cal. 237 [26 P. 902] ; *Rauer's Law etc. Co.* v. *Berthiaume,* 21 Cal.App. 670 [132 P. 596, 833] ; *Clendenin* v. *White,* 62 Cal.App. 664 [217 P. 761] ) ; that it requires less evidence to establish agency in a case of this kind than in other cases (*Rauer's Law etc. Co.* v. *Berthiaume, supra; Wagoner* v. *Silva,* 139 Cal. 559 [73 P. 433] ) ; that such an agency may be established by proof of ratification of acts already performed without previous authority. (*Schader* v. *White,* 173 Cal. 441 [160 P. 557].)

The case of *Althof* v. *Conheim,* 38 Cal. 230 [99 Am.Dec. 363], is persuasive on this question. The wife resided in San Francisco and conducted a business there. While the husband was residing in another state the wife purchased a piece of property partly with her own money and partly with borrowed money. This loan was evidenced by the promissory note of the wife alone. She took the deed to the property in her own name. Later the husband came to California and he and his wife resided on the property and sold part of it, both joining in the deed. The lender of the money sued both the husband and wife for the money loaned and prayed that the judgment be made a lien on the unsold portion of the property. The trial court sustained the demurrer of the husband to the complaint and entered judgment in his favor. In reversing the judgment the Supreme Court said:

"But the demurrer of the husband ought to have been overruled. If the wife had no previous authority from the husband to contract the debt to the plaintiff, he adopted and ratified the transaction by using and occupying the lot, selling a portion of it, and appropriating the proceeds to his own use. Whilst dealing with the property as his own, which was

in part paid for with the plaintiff's money, borrowed by the wife for that purpose, the law will presume either that the wife had authority to contract the loan, or that the husband has since ratified the transaction and agreed to be bound by it. He will not be allowed to say that he ratifies so much of it as inures to his advantage, by accepting the benefit of a purchase made by his wife partly with the plaintiff's money, but repudiates so much of it as requires the sum advanced by the plaintiff to be refunded. He must take the transaction *cum onere,* if he adopts it at all. In ratifying the purchase by his wife, he ratifies her engagement to the plaintiff as well, and in adopting one he adopts the other.''

The case of *Althof* v. *Conheim, supra,* was quoted from and followed in *Hulsman* v. *Ireland,* 205 Cal. 345 [270 P. 948], where the husband and wife were sued for the debts of a partnership of which the wife, but not the husband, was a member. The trial court gave judgment against the wife but refused the plaintiffs judgment against the husband. In reversing the portion of the judgment in favor of the husband it was said:

''This presents such a clear case of ratification of the acts of the wife as to leave us in no doubt that her action had his express consent. To allow him to stand by and take the profits, had there been any, without assuming the burdens, would be to support a principle which would work an injustice to creditors dealing in good faith with one spouse as the representative of the other.''

*Meyer* v. *Thomas,* 37 Cal.App.2d 720 [100 P.2d 360, 1066], and *Brown* v. *Oxtoby,* 45 Cal.App.2d 702 [114 P.2d 622], are to the same effect.

We therefore conclude that Cora M. Vandeventer, having participated in the fraudulent transaction, having accepted the fruits of the fraud which still remain in her possession, cannot escape liability for the results of the fraud while still retaining parts of the benefits. The judgment in her favor cannot be allowed to stand.

Defendants urge that as the plaintiff gave no notice of rescission before this action was filed, he cannot claim a rescission now. While no notice of rescission was given, the amended complaint upon which the action was tried did allege that the plaintiff was ready, able and willing to reconvey to defendants the ten acres of land near Tranquility which was all that he had received from defendants.

As a general rule it is firmly established in California that a party attempting to rescind a contract must give notice of rescission to his adversary with an offer to restore the consideration he has received as a condition precedent to his bringing an action to rescind. (4 Cal.Jur. 763.) There are equally well recognized exceptions to this rule. Two of these exceptions need be noted here. One of these is where, without fault of the plaintiff, circumstances have arisen that make it impossible to effect a full rescission, and the other is where the rights of the defendant can be fully protected by the decree of a court of equity. (*Lawrence* v. *Ducommun*, 14 Cal. App.2d 396 [58 P.2d 407]; *Zeller* v. *Milligan*, 71 Cal.App. 617 [236 P. 349].) The latter class of cases may, and sometimes does, arise where there is a confidential relation existing between the parties, and the court may find that a trust has been created by operation of law. (*More* v. *More*, 133 Cal. 489 [65 P. 1044, 66 P. 76]; *Donnelly* v. *Rees*, 141 Cal. 56 [74 P. 433]; *Gatje* v. *Armstrong*, 145 Cal. 370 [78 P. 872]; *Walsh* v. *Majors*, 4 Cal.2d 384 [49 P.2d 598]; *Mabry* v. *Randolph*, 7 Cal.App. 421 [94 P. 403].)

In the instant case, defendants, at the time they acquired title to the Bakersfield property, borrowed $600 from Nellie L. Jones and placed an encumbrance on the property to secure that debt. That Nellie L. Jones was an innocent party is not questioned. Shortly thereafter Vandeventer placed a homestead on the property. Plaintiff had no part in either of these transactions which made it impossible to restore the parties to the exact position they occupied before the fraud was perpetrated on plaintiff. What was said in *Zeller* v. *Milligan, supra,* should be appropriate here:

"The instant action was commenced on the day following the discovery by plaintiff of the alleged fraud which had been practiced upon her by the defendants. The law abhors idle acts. A formal notice of rescission on the same day on which the suit was instituted would have given the defendants no information differing either in nature or extent from that contained in the allegations of the complaint; nor were defendants' rights in the premises in any manner changed or prejudiced by reason of the plaintiff's failure to give notice.

"Adopting the language used by the supreme court in the case of *California F. & F. Co.* v. *Schiappa-Pietra*, 151 Cal. 732, 742 [91 P. 593, 596], 'We are therefore of the opinion that the circumstances shown by the complaint fully justify

the failure of plaintiffs to offer to restore possession of the property before the commencement of the action, and bring the case within those classes of cases in which no such offer is necessary as a condition precedent to action.' ''

That Vandeventer was the agent of plaintiff in the transaction, and that a confidential relation existed between the parties, cannot be doubted. ■ Here, the agent, by fraud, obtained the property of his principal and may be held to hold it in trust for the principal he defrauded.

■ Factually, the case of *Mabry* v. *Randolph, supra,* is similar to the instant case. In holding that a notice of rescission was not a necessary prerequisite to bringing the action, the court said:

''The law prohibits an agent from purchasing property after the creation of the agency and selling it to his principal at an advance without a full disclosure to his principal of all the facts connected with his purchase. Nothing is wanting to establish a case of the grossest fraud. . . .

''The other ground of the motion, that a sufficient notice of rescission was not served by plaintiff, cannot be considered in connection with the facts of this case. Rescission is not an exclusive remedy in cases of fraud of this character. Where a trustee obtains the property of his beneficiary by fraudulent means, a court of equity may direct a reconveyance of the property upon terms appropriate to the case without any previous effort at rescission by the party defrauded.''

In the instant case the trial court may find it impossible to restore the parties to the exact position they occupied before the fraud was perpetrated. However, if we understand plaintiff correctly, he may be satisfied with a decree restoring his lien on the Bakersfield property as security for the former debt of $1,650, subject to the incumbrance of Nellie L. Jones, but prior to the declaration of homestead, and reviving the indebtedness of $1,000 and $175; that the decree may order him to convey the ten acres near Tranquility to defendants or either of them. A court of equity should find little difficulty in doing substantial justice between the parties in a case of this kind.

The judgment is reversed.

Barnard, P. J., and Griffin, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied May 20, 1943.