[Civ. No. 15784. First Dist., Div. Two. June 3, 1954.]

FRANCES TINSLEY, Plaintiff, v. ALEXANDER BAUER, Respondent; CLINT R. TINSLEY, Third Party Claimant and Appellant.

*Assigned by Chairman of Judicial Council.

Joseph A. Brown and Charles O. Morgan, Jr., for Third Party Claimant and Appellant.

Philip S. Ehrlich, Albert A. Axelrod, Fred Leuenberger and R. J. Hecht for Respondent.

NOURSE, P. J.—This is an action under section 689, Code of Civil Procedure, to determine title to personal property (bank accounts) levied on under writ of execution based on the judgment in the preceding case (appeal 15854) [*ante*, p. 714 (271 P.2d 110)]. Clint R. Tinsley, the husband of Frances Tinsley, filed with the sheriff two third party claims and Mr. Bauer, the judgment creditor, filed a petition to determine title to the property so claimed by the third party. The judgment determined that third party claimant is not the owner and has no right superior to the judgment lien in the following personal property:

(a) Moneys in the commercial account with American Trust Company, Third and Palou Office, San Francisco, in the name of Mr. and Mrs. Tinsley and the sum of $8.86.

(b) Moneys in savings account No. 32381 with American Trust Company, Savings Union Office, San Francisco, in the name of Mrs. Tinsley and the sum of $1,853.58.

(c) Moneys in savings account No. 32845 with American Trust Company, Savings Union Office, San Francisco, in the name of Mr. and Mrs. Tinsley and the sum of $216.41.

(d) Christmas savings account with American Trust Company, Third and Palou Office, San Francisco, in the name of Mrs. Tinsley and the sum of $16.

(e) Moneys in Share Account No. 4811 with Citizens Federal Savings and Loan Association, in the name of Mr. and Mrs. Tinsley and the sum of $3,861.71.

(f) Savings in Share Account No. 4315 with the Bayview Federal Savings and Loan Association in the name of Mr. and Mrs. Tinsley and the sum of $3,784.83.

The husband, third party claimant, appeals. He contends that the evidence is insufficient to support the decision because all the property levied on was proved to be separate property of the husband, community property, property held in joint tenancy or property excluded by law from execution.

Before taking up the evidence as to the separate accounts it seems necessary to discuss the general principles involved. Section 689, Code of Civil Procedure, expressly provides that at the hearing to determine title, the third party claimant shall have the burden of proof. Appellant primarily takes the position that neither his separate property nor any community property is liable for the postmarital debts of his wife (citing the first sentence of Civ. Code, § 167, and Civ. Code, § 171a) and that therefore it is sufficient that he show that the accounts were intended as community accounts and that what went into them was separate property of his and earnings of the parties during marriage to sustain his burden, in which he claims to be assisted by the presumption that acquisitions during marriage are community property. However this completely ignores the last provision of section 167, Civil Code, added in 1937: ''Except as otherwise provided by law, the earnings of the wife are liable for her contracts heretofore or hereafter made before or after marriage.'' Since that amendment the earnings of the wife which became community property are liable for her contracts. (*Meyer* v. *Thomas,* 37 Cal.App.2d 720, 725 [100 P.2d 360, 1066].) Although it has been held with respect to exemption of earnings of the wife for debts of the husband (Civ. Code, § 168) that it is waived where such earnings are so commingled with other community property as to lose their identity (*Tedder* v. *Johnson,* 105 Cal.App.2d 734, 738 [234 P.2d 149] and cases there cited) the same will not apply to the liability under section 167, Civil Code; the wife can waive her exemption but not the liability to her creditors. The fact that under section 171a, Civil Code, the community property in general is not liable for torts of the wife (*McClain* v. *Tufts,* 83 Cal.App.2d 140 [187 P.2d 818]) does not prevent that the earnings of the wife may be liable under section 167,

certainly when the tort has been waived and a contract action instituted, as in the case here. To prove his title against a judgment creditor of his wife the claimant husband must therefore show that the property levied on is his separate property or that it is community property not derived from earnings of his wife. Moreover, it would seem that the amounts held in the preceding case to have been embezzled by the wife, should be liable in the same manner as her earnings under section 167, Civil Code. The fruits of her tort or crime may well be considered as earnings for this purpose or at least treated analogously.

 Respondent urges further that the husband may be liable for the wife's torts both with his separate and with community property if the wife can be considered his agent or at least he as joint tort feasor with his wife, relying mainly on *Meyer* v. *Thomas, supra,* 37 Cal.App.2d 720. As there is in our case no evidence of actual participation of the husband in the embezzlements, it is of importance on what exactly the liability can be based. There is in the Meyer case the sentence: "Here, the evidence proves knowledge on the part of the husband of the actions and intent of the wife, and his ratification thereof by acceptance of the benefits of the fraudulent transaction." (P. 725.) However, the liability is not solely based on the acceptance of benefits. There are several expressions in the case showing that the court held that the husband had actually participated. There seems to be no good authority for general liability of the husband who only knowingly benefited from a tort.

In *Hulsman* v. *Ireland,* 205 Cal. 345 [270 P. 948], also cited by respondent, action was brought against the husband as partner in a partnership with his wife and a third person for a partnership debt. The trial court found that the husband was not a partner but an employee of the other two who were the only partners. The Supreme Court held the husband nevertheless liable on the ground that he had so clearly ratified the action of the wife from which he intended to profit, that the wife could be considered his agent. In our case there is not shown such cooperation of husband and wife that liability of the husband could be based on the assumption that the wife was his agent in the embezzlement.

There are some cases which indicate that one spouse will not be permitted to hide behind statutory rules of exemption from levy when he is reaping the fruits of the acts of the other spouse on which the action is based, especially if these fruits

can be traced into the property levied on. For instance in *Kemp* v. *Enemark,* 194 Cal. 748 [230 P. 441], the court affirmed the denial of an injunction from levying on homestead property, where the judgment to be enforced was for a loan obtained by the husband by forging a signature, and the money had gone into the property on which the wife, who had not participated in the fraud, had declared the homestead. The court relies on *Shinn* v. *Macpherson,* 58 Cal. 596, in which case the wife had declared a homestead after which the husband paid off a mortgage on the homestead property with money he fraudulently took from a.partnership of which he was a member. It was pointed out·that although there was no evidence of participation of the wife, she would reap the fruit of the fraud. It should be noted however that the Kemp and Shinn cases were based on equity and the requirement of doing equity. The principle of these cases, however, strengthens the conclusion that the husband is entitled to release of only so much of the property levied on as he has clearly proved not to be derived from the earnings or illegal takings of the wife.

In considering in how far the judgment against the husband is supported by the evidence the preceding rules relating to the earnings and illegal takings of the wife are of great importance because of the large amount of the earnings of the wife compared to the income of the husband. His income in those years was around $4,000 a year. In 1950 the wife's taxable income from respondent's business was more than $14,000, in 1949 some $4,500. The fact that not too long prior to the levy, in the years 1949-1950, there were receipts to an amount of $18,500 before taxes from the wife's income and $2,800 from her admitted additional takings which were subject to levy by respondent may well have influenced the trial judge and caused a conflict with most of the evidence of appellant.

We now turn to the separate bank accounts levied on.

(1) Account (b) of $1,853.58 in the name of Mrs. Tinsley alone. As to this account, appellant alleged in his first claim filed that the money in this account was partly his separate property received prior to marriage and the balance community property under his control, substantially all from his personal earnings and none from the earnings of his wife.

Appellant testified that he enlisted in the Navy in December, 1941, and was married October 3, 1943. He sent allot-

ments first to a sister to be deposited in a bank account and later to his wife, or prospective wife for the same purpose. He also sent the latter, even before his marriage, some $200 a month from gambling earnings. However, the wife testified that she put the gambling money in a safe deposit box, not in the account here involved. Letters between the two during the time Mr. Tinsley was in the service were introduced to demonstrate that the character of the money so sent by him to her was community property. That in 1944 Mrs. Tinsley repeatedly wrote *our* savings account, etc., is urged to show that the money was not a gift to her separately. Mr. Tinsley testified that it was Mrs. Tinsley who opened the accounts and that he left all the banking to her. He was never entered on the card. His wife made the withdrawals and deposits; he was not familiar with them. The amounts of $102.50 deposited at regular intervals were his allotments.

Mrs. Tinsley testified that the initial deposit on April 4, 1944, was from earlier allotments sent to her and the sister. She was continually employed while her husband was overseas. Later amounts of $102.50, $100 and $200 were also derived from allotments. But an amount of $1,164.72 deposited April 25, 1945, was her money, earned before she was married. Other deposits late in 1945 were explained as being the husband's from the Navy or from salary. Sizable amounts deposited in 1946 were unexplained. She was, however, in that year not employed before November 20, 1946. Smaller later amounts were dividends of stock. The first withdrawals were for furniture and such, the later withdrawals for purchase of stock. The purchased stock was in her own name. The account was left in her name alone so that it should not be stopped in case of the husband's death. Her own money, the above $1,164.72, was deposited after $1,500 had been withdrawn for furniture. Although she had been working during the time the allotments came, and she had no other account, none of her earnings went into the account. The $1,164.72 from her earnings before marriage were brought over from an old account in her maiden name because "It was ours."

■ Although this evidence if believed would indicate that Mr. and Mrs. Tinsley wished to make all moneys in this account community property, and that at least a sizable part of the money in it was not derived from her earnings, the trial judge could reject it, provided he did not do so arbitrarily. In this respect the evident interest of the Tinsleys

in this testimony is relevant. ██ Moreover the fact that the account was in the name of Mrs. Tinsley only, that the stock bought from these moneys were in her sole name, that more than $1,000 earnings of the wife went into the account contrary to appellant's allegation, that the allotments sent to her were according to law "for the support of the dependent" (U.S. C.A. tit. 37, § 252), seems sufficient to make the rejection not arbitrary and to cause a conflict which makes the decision of the trial court binding on this court. (Compare *Watwood* v. *Steur*, 89 Cal.App.2d 620, 624 [201 P.2d 460].)

██ (2) The Christmas savings account (d) of $16 was also in the name of Mrs. Tinsley only. She testified that the deposits were made from a commercial account in which her salary checks were deposited and in which in 1950 nearly $30,-000 was deposited. The decision of the trial court with respect to this account seems amply supported.

██ (3) The savings in share account No. 4315 with the Bayview Federal Savings and Loan Association in the amount of $3,784.83 (f) was in the name of the Tinsleys as joint tenants with right of survivorship. As to this account appellant had alleged the amount was community property in his control, at least one-half of which was from his personal earnings or income. Mrs. Tinsley testified that she opened the account on August 26, 1947. In 1947-48-49 there were many deposits either in cash or in checks in amounts from $100 to $400 which she either could not trace or only to "our checking account." She conceded that most of her salary checks were deposited in that checking account. Several items in 1949 and 1950 were identified as salary checks or expense checks of the husband, one as an insurance refund check of the husband, one as her salary check, two as income tax refunds on their joint return. The only sizable withdrawal was $1,000 which went to their checking account. The cash deposited was either cash she saved or from her safe deposit. She also said that in 1947 they transferred money from the checking account at the Third and Palou Office of the American Trust Company to this savings account, although her checking account was only transferred to Third and Palou in 1950 from Savings Union when they took a loan from the Third and Palou Office. All deposits, including cash, and all withdrawals were made by her personally. She worked near this bank; her husband never came near it.

If her testimony were believed the salary deposits of her husband in so far as still considered present in the balance

would not be subject to levy. However, as stated before with respect to the first account the trial court could reasonably disbelieve Mrs. Tinsley's evidence. Moreover many of the deposits were derived from sources of which it was not shown that they did not find their origin in Mrs. Tinsley's earnings, illegal takings or separate property. As the husband did not make an exact showing of how much of the balance was not traceable to such sources subject to levy, the trial court was entitled to make its decision with respect to this account wholly adverse to him.

Appellant argues that because the account is a joint tenancy account respondent was entitled to levy on the wife's half interest in the account only, so that appellant was at any rate entitled to one-half of the balance. Appellant's reliance on the joint tenancy character of the account seems completely undermined by his allegation mentioned above that the moneys in said account were and are community property. ■ The presumption that money in a joint tenancy account of husband and wife is joint tenancy property is rebuttable. (*Paterson* v. *Comastri,* 39 Cal.2d 66, 70 [244 P.2d 902]; *Cash* v. *Cash,* 110 Cal.App.2d 534, 538 [243 P.2d 115].) No stronger rebuttal as to appellant is possible than his own allegation in his pleading. (*Silverstein* v. *Silverstein,* 76 Cal.App.2d 872, 877 [174 P.2d 486].) It seems therefore unnecessary to decide whether, as urged by respondent, the deposit of separate property, earnings or embezzlements of the judgment debtor in a joint account would be invalid as to the judgment creditor as a fraudulent conveyance.

■ Appellant further argues that $1,000 of this account was at any rate exempt from execution under section 690.21, Code of Civil Procedure, relating to shares in building and loan associations. However the contention is not available to appellant because he did not invoke the exemption in the trial court and he did not deliver to the levying officer an affidavit claiming the specific exemption by code section as required by section 690.26, Code of Civil Procedure.

(4) The Share Account No. 4911 with the Citizens Federal Savings and Loan Association in the amount of $3,861.71 (e) is in the name of Clint R. Tinsley or Frances Tinsley and not a joint account. It was opened September 8, 1950, with a deposit of $3,562.33 of which, according to Mrs. Tinsley, $2,286.35 was from stock sold, the balance via their checking account from her salary. Another deposit of $268.01 was also a salary check of hers. ■ The stock was in her own

name and bought with money from account (b) held subject to levy above under (1). If the decision as to account (b) must be upheld, the same must apply to this account.

 (5) The savings account with American Trust Company in the amount of $216.41 (c). It was payable to the Tinsleys as joint tenants or to the survivor. Appellant had alleged that this amount was community property under his control, substantially all from his earnings. Mrs. Tinsley testified that all deposits were made by her. The first deposit on March 15, 1947, in the amount of $900 came from a checking account in which in August, 1946, $1,500 was deposited, obtained by the sale of furniture bought for the same amount from account (b) in 1945. As to the origin of further deposits to the amount of some $950 in 1947, $3,400 in 1948 and some $300 in 1949, Mrs. Tinsley had no recollection. A large number of items varying from $66 to $166, mainly in 1949, totalling some $1,500 were ascribed to the husband's salary checks. There was also at the end of 1949 a bonus check of Mrs. Tinsley from Bauer of $360, and a Christmas club check of $100.50 derived from the checking account. On March 25, 1949, over $1,000 was withdrawn to buy stock in Mrs. Tinsley's name; in 1951 $1,000 was withdrawn to decrease the mortgage on their house and on June 18, 1951, the bank which held the account as collateral for a note took $2,300 for the balance of that note.

If this evidence was believed there passed through this account some $1,500 derived from the husband, $1,500 derived from account (b), and more than $2,000 derived from Mrs. Tinsley or of unknown origin. Even if that evidence was believed it would seem that, as appellant did not and does not explain to how much of the little balance of $216 the above data entitled him, under the circumstances of this case the decision as to this amount must be upheld. Appellant's arguments based on joint account and exemption of $1,000 in shares of building and loan associations, mentioned under (3) relate also to this account and must be rejected on the same grounds.

(6) As to the little balance of $8.86 in the checking account (a) appellant offered no evidence so that he did not sustain his burden of proof.

Although earnings of the husband may well have contributed to some extent to the accounts levied on, the result reached by the trial court seems just. The evidence showed that there remained over and above the accounts levied on

as community property a house on which $8,000 was paid and furniture for which $12,000 was paid, both bought in 1950, and some cash from sale of stocks, together much more than could be saved from the husband's income. Moreover the judgment creditor should not suffer because of the fact that assets on which he is entitled to levy and assets which the husband can claim as exempt are so commingled that the husband cannot demonstrate exactly how much is exempt from levy.

Judgment affirmed.

Dooling, J., and Bray, J.,* concurred.

A petition for a rehearing was denied July 2, 1954.

*Assigned by Chairman of Judicial Council.